THE ROCKLAND WATER COMPANY, in equity,

*vs.*

THE CAMDEN AND ROCKLAND WATER COMPANY.

Knox. Opinion November 3, 1888.

*Charters. Corporations. Vested rights. Water companies. Waters.*
*Spec. stat. 1850, c. 381; 1861, c. 79.*

Acts of incorporation, granted upon a valuable consideration, partake of the nature of contracts within the meaning of that clause of the Constitution of the United States which declares that no state shall pass any law impairing the obligation of contracts.

When rights have become vested under them, the authority of the Legislature to disturb those rights is at an end; nor can any subsequent act control or destroy them, unless such power is reserved in the act of incorporation, or in some general law in operation at the time the act was passed.

There may be such legislative action as to injuriously affect the interests of those with whom such contract exists, and yet impair no obligation of contract.

When a state by act of incorporation confers no exclusive privileges to one company it impairs no contract by incorporating a second one with powers and privileges which necessarily produce injurious effects and consequences to the first.

By the provisions of c. 381, Special Laws of 1850, certain individuals therein named, with their associates and successors were constituted a corporation by the name of the Rockland Water Company "for the purpose of conveying to the village of Rockland, a supply of pure water for domestic purposes, including a sufficient quantity for the extinguishment of fires, and the supply of shipping in the harbor of Rockland." The third section of said act reads thus : " Said corporation is hereby authorized for the purposes aforesaid, to take, hold and convey to, into and through the said village of Rockland, the water of Tolman's Pond, so called, situate in Rockland, and Camden, by pipes sunk below the bottom of its outlet, and may also take and hold by purchase or otherwise, any land or real estate necessary for laying and maintaining aqueducts for conducting and discharging, disposing of, and distributing water, and for forming reservoirs. But nothing in this act shall be taken or construed to prevent the owners of mills, or of mill privileges on the stream flowing through the outlet of said pond, from using the water thereof in the same manner that they now do or have heretofore done; but said mill owners shall not nor shall any other person or persons, be permitted, either by cutting below the pipes of said corporation, or in any other way to withdraw the water or obstruct the water-works of said corporation." By a subsequent act of the Legislature (c. 79 Spec. Laws of 1861) amendatory

of the plaintiffs' charter, this company was authorized "to take, hold and convey" in the manner provided in the original act, "as well the water of Oyster River Pond in Camden, as of Tolman's Pond, into and through the city of Rockland and town of Thomaston, and also from the city of Rockland into the towns of Camden and South Thomaston not exceeding one mile from the boundary line of said Rockland; and the corporation shall have the same rights, powers and privileges and be subject to the liabilities, limitations and conditions and be answerable to parties injured thereby in the same manner in respect to taking and conveying the said water, as are provided for in said act, in respect to taking and appropriating the water of Tolman's Pond." This act further authorized the corporation "to take, use and appropriate water from both or either of said ponds for supplying the people of said city and towns with pure water, and for all necessary and useful purposes subject to the liabilities provided for by said act."

*Held,* That there was no exclusive right conferred by either of said acts; and that inasmuch as the corporation had never taken or appropriated the water or any portion thereof, from Oyster River Pond nor shown any necessity for so doing, the water in Tolman's Pond being sufficient for the purposes designated in the charter, the Legislature transcended no constitutional rights in granting a charter to a rival company with powers and privileges similar to those first granted, and authorizing the use therefor of the water in Oyster River Pond.

ON report.

Bill in equity, heard on bill, answer and proof.
The opinion states the case.

*A. P. Gould,* for the plaintiff.

The act of 1861 was a competent mode of making a legislative grant, expressly sanctioned by the Supreme Court of the United States in the Binghamton Bridge case, 3 Wall. 51.

The rules of construction applicable to grants or franchises, and public property to corporations upon which some duty to the public is imposed, and therefore their objects are beneficent to the public, are more liberal than in grants of franchises for private purposes merely; monopolies and legalized nuisances, such as the grant to the Fertilizing Company discussed in 97 U. S. 659.

Grants for the purpose of creating a benefit to the public, such as the supply of water to a given community, are of mutual benefit to the grantor and grantees, and should, therefore, be

construed substantially as private. *State* v. *Noyes*, 47 Maine, 189; *Boulton* v. *Bull*, 2 H. Blk. 463–500.

The charter is not to be construed by the rules laid down for the construction of royal grants. As was said by Chief Justice PARSONS, "In England prerogative is the cause of one against the whole. Here it is the cause of all against one. In the first case, the feeling and vices, as well as the virtues, are enlisted against it; in the last, in favor of it. And, therefore, here it is of importance that the judicial courts should take care that the claim of prerogative should be more carefully watched." 1 Mass. 356.

A distinction is recognized by the courts, both in this country and England, between the construction of a crown grant and a legislative grant. Judge STORY, in the Charles River Bridge case, 11 Pet. 598.

It was competent for the legislature to make an exclusive grant to plaintiff of the water of Oyster River Pond for the purposes mentioned in the grant. *Piscataqua Bridge* v. *N. H. Bridge*, 7 N. H. 35, 63, and numerous authorities there cited; *Charles River Bridge* v. *Warren Bridge*, 11 Peters, 496; Cooley's Con. Lim. pp. *281, *284.

That the express language of section 3 is sufficient to create an exclusive privilege, is supported by many decisions of the highest authority. That the grant need not be in express terms exclusive, but that the intention of the legislature may be gathered from its whole scope, and from the nature and object of the grant, see the opinion of STORY, J., in *Charles River Bridge* v. *Warren Bridge*, beginning on page 588, and especially from pages 555 to 559, and the authorities cited by Justice McLEAN.

For language which was considered sufficient to create an exclusive right, see *Bridge Proprietors* v. *Hoboken Co.* 1 Wall. 116.

In *Binghamton Bridge*, 3 Wall. 51, the court hold that "a clause in a statute, 'that it shall not be lawful for any person or persons to erect a bridge within a distance of two miles,' means,

not only that no person or association of persons shall erect such a bridge without legislative authority, but that the legislature itself will not make it lawful for any person or association of persons to do so by giving them authority."

In *State* v. *Noyes*, 47 Maine, 189, the court hold that a charter containing a limitation of legislative power no more specific than the plaintiff's respecting the grant of water, was a binding contract on the part of the state, which is to be construed "upon the same principles which are applied to contracts between private individuals." This doctrine has been solemnly announced in this state, in *Moor* v. *Veazie*, 32 Maine, 343, and in Massachusetts in 2 Gray, 1; (*Boston & Lowell R. R.* v. *Salem & Lowell Co. et als.*) *Piscataqua Bridge Co.* v. *N. H. Bridge Co.* 7 N. H. 35, is an illustrative and very pertinent case.

Judge COOLEY says, a grant by the legislature of a state can no more be disregarded than a grant by an individual. "A contract executed, as well as one which is executory, is binding on the parties. A grant in its own nature amounts to the extinguishment of the right of the grantors, and implies a contract not to reassert that right," and this doctrine applies to states as well as to individuals. Cooley's Con. Lim. *274, *275; see *238.

"If a privilege granted by the state is of such a character that it cannot be enjoyed by several parties at the same time, the state cannot impair its original grant by subsequently conferring similar privileges upon other parties." Morawetz, Corp. §.432; *Chesapeake & Ohio Canal Co.* v. *Baltimore & Ohio R. R.* 4 Gill. and John. 1, and *New Haven* v. *New Haven Water Co.* 44 Conn. 106.

In *West River Bridge Co.* v. *Dix*, 6 How. (U. S.) on page 537, the court say, "the franchise, no more than a grant of land, can be annulled by the state. These muniments of right are protected alike, subject to be taken for public uses."

"A grant of new franchises to a corporation, is clearly a waiver which will debar the state from proceeding against the company on account of any prior forfeiture. . . . An act showing an intention on the part of the state, that the corporation shall

continue its existence, will be considered an absolute waiver of any existing right to enforce a forfeiture of the company's franchises." Mor. Corp. § 555, last clause and authorities cited in note (2).

R. S., c. 46, § 23, provides that "acts of incorporation may be amended, altered, or repealed by the legislature, unless they contain an express limitation." If that provision can have any reference to such a case as ours, we have the "express limitation" of the power of the legislature to grant the water to others. A repeal or modification is in the nature of a decree of forfeiture, and, in accordance with a cardinal principle in our law, there must be notice and a hearing. *Coleman* v. *Andrews*, 48 Maine, 562, 564.

And the notice must contain a specific statement of the proposition to repeal, alter, or amend. The power of repeal or modification is not unlimited. *Commonwealth* v. *Essex Co.* 13 Gray, 239, 253.

Our right to the water in Oyster River Pond has become vested by the acceptance of the grant, and the expenditures based upon the faith of it. Cooley, Con. Lim. * 238.

In *Holyoke Co.* v. *Lyman*, 15 Wall. 500, on page 519, in discussing the power of the legislature under the reserved right to repeal, alter or amend a charter or act of incorporation, the court say · "Vested rights, it is conceded, cannot be destroyed or impaired under such a reserved power."

It may be conceded, as was intimated by SHAW, C. J., in *Lumbard* v. *Stearns*, 4 Cush. 60, 62, that the legislature, under the reserved right to amend, would have the right to inquire whether we have been guilty of a breach of public duty. We admit that we are bound to use due diligence in giving to the people a supply of water; and failing in this, that the legislature might direct how it should be done, but we deny the power to take our property from us in the mode attempted. See Morawetz, Corp. § 498.

If the whole of a franchise should become necessary for the public use, I am not prepared to say that the right of eminent domain in an extreme case, would not extend to, and authorize

the legislature to take it on payment of a full equivalent." *Boston Water Power Co.* v. *Boston & Worcester R. R. Co.* 23 Pick. 360, 393 ; Cooley's Con. Lim. (5th ed.) * 562, * 563.

"The settled and fundamental doctrine is, that government has no right to take private property for public purposes without giving a just compensation, and it seems to be necessarily implied that the indemnity should, in cases which will admit of it, be previously and equitably ascertained and be ready for reception concurrently in point of time with the actual exercise of the right of eminent domain." Kent's Com. (7th ed.) * 339, note c ; *Cushman* v. *Smith*, 34 Maine, 247.

The defendant by this answer is precluded from asserting that our rights are to be taken by authority of the legislature, in the exercise of the power of eminent domain. And in no event could such a claim be asserted, until our property had been taken by the defendant by a written act of seizure duly notified to the plaintiff, specifically describing the water, rights, franchise and property of every kind which it takes or proposes to take. *Hamor* v. *Bar Harbor Water Co.* 78 Maine, 127.

The constitutional power of the legislature to grant to us the exclusive right to withdraw the water from Oyster River Pond "to supply aqueducts," for the purposes defined in our grants, is expressly declared by our court in *Moor* v. *Veazie*, 32 Maine, 343, 359 ; see also Morawetz, Corp. § 431 ; *Boston & Lowell R. R. Co.* v. *Salem & Lowell R. R. Co.* 2 Gray, 1, 32–34 ; *Fletcher* v. *Peck*, 6 Cranch, 135.

Grants by the legislature of franchises, rights, privileges and property, to a corporation, become vested upon their due acceptance by the corporation. They then become like accepted grants between private persons. Morawetz, § § 14, 15, 16, and authorities cited.

Even if the legislature should repeal our charter and its amendment, i. e., both the act of 1850 and the act of 1861, the property which had vested in the corporation would not thus be taken from it, but would vest in the shareholders. R. S., c. 46, § 54.

Even under the reserved right to alter, amend or repeal the

charter, the grantees of exclusive rights from the state cannot be divested of those rights by alteration or repeal. It can be done only by the exercise of the right of eminent domain. Morawetz, § 428, and authorities in note 2 ; *Parker* v. *Metropolitan R. R. Co.* 109 Mass. 506 ; *Roxbury* v. *Boston & Prov. R. R. Co.* 6 Cush. 424 ; *Commonwealth* v. *Essex Co.* 13 Gray, 239 ; *Fitchburg R. R. Co.* v. *Grand Junction R. R. Co.* 4 Allen, 198 ; *Commonwealth* v. *Eastern R. R. Co.* 103 Mass. 254 ; *Commissioners of Inland Fisheries* v. *Holyoke Water Power Co.* 104 Mass. 446 ; *Greenwood* v. *Freight Co.* 105 U. S. 13.

Under the power reserved by a general statute of Connecticut, the court held, " that when the legislature had reserved a general power of altering, amending or repealing a charter, it might impose any additional condition or burden, connected with the grant, which it might deem necessary for the welfare of the public, and which it might originally and with justice have imposed." *English* v. *N. H. & No. Hampton Co.* 32 Conn. 240.

Judge STORY, in *Wilkinson* v. *Leland*, 2 Peters, 627, 657, said, "That government can scarcely be deemed to be free, where the rights of property are left solely dependent upon the will of a legislative body, without any restraint. The fundamental maxims of a free government seem to require that the rights of personal liberty and private property should be held sacred. At least, no court of justice in this country would be warranted in assuming that the power to violate and disregard them, a power so repugnant to the common principles of justice and civil liberty, lurked under any general grant of legislative authority, or ought to be implied from any general expressions of the will of the people." *Terrett* v. *Taylor*, 9 Cranch, 43.

What would be a violation of § 11 of Article 1 of the Constitution of Maine, or par. 1, § 10, Article I, of the Constitution of the United States, prohibiting the passage of any law impairing the obligation of contracts, if such an act is not? *Langdon* v. *City of New York*, 93 N. Y. 129, is a very important and elaborately reasoned case, bearing in many respects upon the case at bar ; see also 3 Kent's Com. 458, 459 (Title Franchises).

There are several water and gas company cases directly in point, and of the highest authority, in plaintiff's favor. *New Orleans Water Works Co.* v. *Rivers*, 115 U. S. 674; *New Orleans Gas Co.* v. *Louisiana Light Co.* 115 U. S. 650.

The principles upon which the decision in the last cited case is made, are elaborately discussed by Mr. Justice HARLAN, and we refer to that opinion in detail and the authorities cited by him. We call especial attention to his citation and affirmation of the cases, *Bridge Proprietors* v. *Hoboken Co.* and *The Binghamton Bridge.* He distinguishes clearly between that class of cases and the case of *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659. He also says that the case of *Stone* v. *Mississippi*, 101 U. S. 814, was decided upon the same principles. See also *Louisville Gas Co.* v. *Citizens' Gas Co.* 115 U. S. 683; *St. Tammany Water Works* v. *New Orleans Water Works*, 120 U. S. 64; *Commonwealth* v. *Penn. Canal Co.* 66 Pa. St. 41.

If plaintiff has not adopted such means as are best adapted to furnishing a supply of water to the city, or has in any way misused its franchise, it would be competent for the legislature to make any reasonable amendment regulating the use of the franchise, which would not defeat or essentially impair the object of the grant. This seems to be the established construction and application of the reserved power to amend, alter or repeal, as appears in the case cited from 109 Mass. 506, *Parker* v. *Metropolitan R. R. Co.* and in the cases cited by the court in that opinion, p. 508.

This is also the utmost extent of legislative power under the Massachusetts reservation, which is suggested by Chief Justice SHAW in *Lumbard* v. *Stearns*, 4 Cush. 60; and by MERRICK, J., in *Fitchburg R. R. Co.* v. *Grand Junction R. R. Co.* 4 Allen, 198, 205.

Judge COOLEY says, " Whether a corporation has been guilty of abuse of authority under its charter, so as to justly subject it to forfeiture, is a judicial question which cannot be decided by the legislature." Cooley's Con. Lim. (* 106) and notes 1 and 3. In note 3 he cites approvingly *Irvine's Appeal*, 16 Penn. St. 256, 268; see *Greenough* v. *Greenough*, in 11 Penn. St. 489.

In *Commonwealth* v. *Proprietors New Bedford Bridge*, 2 Gray, 339, the defendants' charter authorized them to build and maintain a bridge over tide waters, with a draw of suitable width for the accommodation of the public, but not to be less than thirty feet, with which defendant complied. The legislature in 1851; passed an act requiring the draw to be not less than sixty feet. An attempt was made to sustain the validity of the act of 1851 by contending that the legislature, by necessary implication, had the right of regulating the construction of the draw. But the court say, "This is founded on an entire misapprehension of the relations of the parties, as created by the act of incorporation. They are but parties to a contract."

In *Briggs* v. *Cape Cod Canal Co.* 137 Mass. 71, it is held that : "Whether a corporation has complied with the condition of its grant, is a question of fact to be judicially ascertained."

In *Boston Glass Co.* v. *Langdon*, 24 Pick. 49, 52, the court say : "Although a corporation may forfeit its charter by abuse or misuse of its powers and franchises, yet this can only take effect upon a judgment of a competent tribunal."

In *Towar* v. *Hale*, 47 Barb. 361, it was held that "a cause of forfeiture cannot be enforced against a corporation collaterally or incidentally. The corporation must have an opportunity to answer."

In *Davis* v. *Gray*, 16 Wall. 203, the court held that the grant of a charter to a railroad by the state, together with certain public lands which were to become the property of the corporation upon the condition precedent that fifty miles of the road should be built within a certain time.

Our right to the water, acquired as it was by grant, would not be forfeited or lost by non-user for any length of time. . It is like the grant of any property, and could be lost only by an adverse use, or possession by some other party for more than twenty years. Mere non-user for twenty years of an easement created by deed is not sufficient proof of abandonment, and the right is not thus lost. 3 Kent's Com. (12th ed.) 449, note 1 ; *Owen* v. *Field,* 102 Mass. 90 ; *Bannon* v. *Angier*, 2 Allen,

128 ; *Arnold* v. *Stevens*, 24 Pick. 106 ; Washburn's Easements, § 551.

"A right acquired by use, may be lost by non-user. . . . This rule is not applicable to rights, or incorporeal hereditaments, secured by a deed of conveyance." *Farrar* v. *Cooper*, 34 Maine, 394.

Washburn says, "Where an easement has been created by express grant, no length of non-user will operate as an abandonment, where there has been no hostile or adverse acts done by the owner of the servient estate during that time, extinguishing such right and creating an adverse prescription." 2 Washburn's Real Prop. (* 83).

In *Jewett* v. *Jewett*, 16 Barb. 150, this doctrine was applied in the case of a water course; and in *Arnold* v. *Stevens*, 24 Pick. 106, to a case where a right to dig ore in a mine was held not to be lost by forty years' non-user.

It is said that non-user may be a cause of forfeiture of a franchise ; but this applies to a franchise of incorporation, as in the case cited in 2 Greenleaf's Cruise, p. 64.

The plaintiff's remedy is in equity. No remedy at law would be adequate. High on Injunctions, § § 570, 571, 395, 573, 575.

This case is very similar to those cited by us from the 1st and 3rd of Wall. *Bridge Proprietors* v. *Hoboken Co.* 1 Wall. 116, and *Binghamton Bridge*, 3 Wall. 51, where equity was not questioned as the proper remedy. *Piscataqua Bridge Co.* v. *N. H. Bridge Co.* is a similar case where equity is held to be the proper remedy.

In *Higgins* v. *Flemington Water Co.* 36 N. J. Eq. 338, it was held that "a water company will be enjoined from wrongfully diverting the water of a stream to the injury of a mill, although the injury is not irreparable."

In *Wilson* v. *City of Mineral Point*, 39 Wis. 160, it was held that "where an injury is of such a nature that it cannot be adequately compensated in damages, or cannot be measured by any certain pecuniary standard, it is irreparable, and will be restrained by injunction."

"An injunction will be granted to protect and secure a party

claiming a franchise under a statute, who is in the possession and enjoyment of such franchise." *Charles River Bridge* v. *Warren Bridge*, 6 Pick. 405 ; *Boston Water Power Co.* v. *B. & W. R. R. Co.* 16 Pick. 525.

" Where the injury is irreparable, not susceptible of being adequately compensated by damages, or such as, from its continuance a permanent mischief must occasion a constantly recurring grievance, which cannot be otherwise prevented, as where loss of health, loss of trade or business, . . . or permanent ruin to property may or will ensue from the wrongful acts, in every such case a court of equity will interfere by injunction." *Webber* v. *Gage*, 39 N. H. 182, 186, and cases cited ; see *Boston Water Co.* v. *Boston & W. R. R. Co.* 16 Pick. 512, 525, 526, and authorities cited ; *Central Bridge Co.* v. *Lowell,* 4 Gray, 474, 480.

The legislature could not authorize water that had been granted to plaintiffs, or in which plaintiffs had been granted a perpetual privilege, whether exclusive or not, to be taken by the defendants for a private purpose such as the running of their machinery or leasing it as a power. Constitution. Bill of Rights, § 21 ; Opinion of Court, 58 Maine, 593, *et seq.* ; *Allen* v. *Jay*, 60 Maine, 124 ; *Brewer Brick Co.* v. *Brewer*, 62 Maine, 62, 71 ; Cooley's Const. Lim. p. 527, note, and cases cited.

The first franchise may be taken in certain cases, by the right of eminent domain, by paying or providing adequate compensation. We have already cited in the general discussion some authorities on this point. We refer especially to the statement of the law on this subject by Morawetz, that, "if a privilege granted by the state is of such a character that it cannot be enjoyed by several parties at the same time, the state cannot impair its original grant by subsequently conferring similar privileges on other parties." § 432. No more precise statement of the proposition is found. An attempt to confer the same privileges upon other parties is condemned by Chief Justice SHAW, in this terse language : " Such a measure would be substantially in fact, under whatever color or pretence, taking

the franchise from one company, and giving it to another, in derogation of the first grant, not warranted by the right of eminent domain, and incompatible with the nature of legislative power." 23 Pick. 393; *Central Bridge Co.* v. *Lowell*, 4 Gray, 474.

In *Lake Shore, &c. R. R.* v. *Chicago, &c. R. R.* 97 Ill. 506, it is held that "The courts will not interfere by injunction to restrain a railroad corporation from condemning a right of way across the tracks of another corporation. There is no want of constitutional power in the legislature to provide for such condemnation; the public use contemplated is not the same use, and, although applied to public uses, the property so taken is, nevertheless, private property, and so within the power of eminent domain, and the courts of law afford an ample forum for the adjustment of compensation."

*Nathan and Henry B. Cleaves* and *Charles E. Littlefield*, for the defendant, cited: Every grant of sovereign power is construed in favor of government, in case of doubt. *Commissioners on Inland Fisheries* v. *Holyoke Water Power Co.* 104 Mass. 450; *Newton* v. *Commissioners*, 10 Otto, 548; *Bradley* v. *S. C. Phos. Co.* 1 Hughes, 72; *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420; 6 Cush. 383; *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 666; *Christ Church* v. *Philadelphia*, 24 How. 301; *Union Bridge Co.* v. *Spaulding*, E. Reporter, Vol. 1, 344.

Exclusive right to water in Oyster River Pond was not given to the plaintiff corporation; if it was, it has been forfeited. *Ætna Mills* v: *Waltham*, 126 Mass. 422; *The Railroad Commissioners, Petitioners,* v. *The Portland and Oxford Central R. Co.* 63 Maine, 269; *Bailey* v. *Woburn*, 126 Mass. 420; *Fort Plain Bridge Co.* v. *Smith*, 30 N. Y. 62; Am. Corp. Cases, Vol. 3, p. 1; *Platt et al.* v. *Covington and Cincinnati Bridge Co.* Am. Corp. Cases, Vol. 4, p. 401; *Oswego Falls Bridge Co.* v. *Fish et als.* 1 Barb. Ch. R. 547; *Mohawk Bridge Co.* v. *Railroad Co.* 6 Paige, Ch. Rep. 554; *Turnpike Co.* v. *State*, 3 Wall. 210; *Re Twenty-Second Street*, 102 Pa. St. 108; *Leich Water Company's Appeal*, 102 Pa. St. 515; *The Bing-*

*hamton Bridge,* 3 Wall. 51 ; *Farrill* v. *Woodard,* 12 Wis. 458 ; *Kent* v. *Cartersville Bridge Co.* 11 Leigh, (Va.) 539 ; High on Injunc. § § 573, 574; *Mayer* v. *Spring Garden,* Penn. St. 348.

Courts have intervened only when exclusive rights have been expressly given. *Piscataqua Bridge* v. *New Hampshire Bridge,* 7 N. H. 35 ; *West River Bridge Co.* v. *Dix et als.* 6 How. 537 ; 2 Gray, 1; *Com.* v. *Essex Co.* 13 Gray, 239 ; *Langdon* v. *Mayor of City of New York,* 93 N. Y. 129 ; *New Orleans Gas Light Co.* v. *Louisiana Light and Heat Producing and M'f'g Co.* 115 U. S. 650 ; *New Orleans Water Works Co.* v. *Rivers,* 115 U. S. 674 ; *Louisville Gas Co.* v. *Citizens' Gas Light Co.* 115 U. S. 683 ; *Rice* v. *Railroad Co.* 1 Black. 380; Sedg. Stat. and Const. Law, 369 ; *Lees* v. *Canal Co.* 11 Cart. 652 ; *New Jersey et als.* v. *Wright,* Supreme Court Reporter, Vol. 6, No. 22, 907.

The state is not required to institute proceedings for a forfeiture. *U. S.* v. *Grundy,* 3 Cranch, 3 37 ; *Com. et al. Att'y Gen'l* v. *Lykens Water Co.* At. Rep. Vol. 2, No. 2, 63 ; *Hooker* v. *Utica Turnpike Co.* 12 Wend. 371 ; 13 Am. Rep. 181 ; Mills on Eminent Domain, § § 38–57 ; Morawetz on Corps. § 428 ; 102 Penn. St. Rep. 123.

Special charters since 1831 Stat. c. 503, subject to amendment. *State* v. *M. C. R. R. Co.* 66 Maine, 488 ; *Miller* v. *State,* 15 Wall. 478, 499 ; *Bangor Railroad Co.* v. *Smith,* 47 Maine, 44 ; *Roxbury* v. *B. &. P. R. Corp.* 6 Cush. 424 ; *Holyoke Co.* v. *Lyman,* 15 Wall. 500 ; *West Wisconsin R.* v. *Sup. of Trempaleau Co.* 35 Wis. 257 ; *Lothrop et al.* v. *Steadman et al.* Am. Law. Reg. Vol. 15. p. 346 ; *Brown* v. *Lowell,* 8 Met. 174 ; *Pratt* v. *St. Lawrence R. R. Co.* 42 Maine, 587 ; Field on Corp. § 51 ; Sedg. on Stat. Law, p. 124 ; Dwarris on Statutes, 155 ; *McCrea* v. *Port Royal Railroad Co.* S. C. 381 ; *Chapman* v. *Curran,* 31 Wis. 209 ; *Union Branch Railroad* v. *East Branch Ga. Railroad Co.* 14 Ga. 327 ; *Met. Railroad Co.* v. *Highland Ry.* 118 Mass. 293 ; *Com.* v. *Essex Company,* 13 Gray, 247 ; *Greenwood* v. *Freight Co.* 105 U. S. 22 ; *East Alabama Railway Co.* v. *Doe,* 114 U. S. 340.

Property including franchises of corporations may be taken for public uses by the power of eminent domain. *West River Bridge Co.* v. *Dix,* 6 How. 507; *Central Bridge Corp.* v. *Lowell,* 4 Gray, 474; *Boston Water Power Co.* v. *B. & W. Railroad Corp.* 23 Pick. 360; *Richmond, &c. Railroad Co.* v. *Louisiana Railroad Co.* 13 How. 71; *Enfield Toll Bridge Co.* v. *H. & N. H. Railroad* Do. 44 Am. Dec. 556; *Head* v. *Amoskeag M'f'g Co.* 113 U. S. 9; *B. & R. Mill Corp.* v. *Newman,* 12 Pick. 477; *Hazan* v. *Essex Co.* 12 Cush. 477; *Talbot* v. *Hudson,* 16 Gray, 423; *Riche* v. *Bar Habor Water Co.* 75 Maine, 95; *Todd* v. *Austin,* 34 Conn. 78; Mills on Eminent Domain, § 23; Gould on Waters, § 244; *Haskell* v. *New Bedford,* 108 Mass. 214; High on Injunc. § § 636, 637, 1274.

The defendant's charter, authorizing the use of street to lay its piping, is lawful. Dillon's Mun. Corps. § 683; *Quincy* v. *Jones,* 76 Ill. 231, 244; *Spring* v. *Russell et als.* 7 Maine, 273; 82 N. Y. 202.

A portion of a charter, which is unconstitutional, may be discarded. Cooley on Const. Lim. 178; *Gorden* v. *Cornes et al.* 47 N. Y. 617; *Packet Co.* v. *Keokuk,* 95 U. S. 80; *Allen* v. *Louisiana,* 103 U. S. 80; *Fisher* v. *McGirr et al.* 1 Gray, 1; *People* v. *Bull,* 46 N. Y. 61; *Warren et al.* v. *Mayor of Charlestown,* 2 Gray, 98; *Com.* v. *Clapp,* 5 Gray, 100; *Com.* v. *Hitchings,* 5 Gray, 485; *Packard* v. *Lewiston,* 55 Maine, 458; *Schwartz* v. *Drinkwater,* 70 Maine, 409; *State* v. *Wheeler,* 25 Conn. 299.

Interests in water as well as land may be taken by the right of eminent domain. *Hamor* v. *Bar Harbor W. Co.* 78 Maine, 127; *Eastern Railroad Co.* v. *B. & M. Railroad,* 111 Mass. 131; *Com.* v. *Essex Co.* 13 Gray, 239; *Hingham & Quincy Bridge Co.* v. *County of Norfolk,* 6 Allen, 353; *Haverhill Bridge* v. *County Commissioners,* 103 Mass. 120; *N. Y. H. & N. R. Co.* v. *B. H. & E. R. Co.* 36 Conn. 196; *W. R. Turnpike Co.* v. *V. C. Railroad Co.* 21 Vt. 590; *People* v. *Smith,* 21 N. Y. 595–598; Mills on Eminent Domain, § 18; *Burden* v. *Stein,* 27 Ala. 104; *Kane* v. *Baltimore,* 15 Md. 240; *Ætna Mills Co.* v. *Brookline,* 127 Mass. 69; *Emporia*

v. *Soden,* 37 Am. Rep. 265; *Cushman* v. *Smith,* 34 Maine, 247; *Bigelow* v. *Union Freight Railroad,* 137 Mass. 480; *Mason* v. *Kennebec & P. Railroad,* 31 Maine, 216; High on Injunc. § 589; *Chenango Bridge Co.* v. *Paige et al.* 83 N. Y. 187; *Farrell* v. *Woodard,* 12 Wis. 458.

FOSTER, J.   The Rockland Water Company claims that it has the exclusive right of supplying the city of Rockland and portions of adjoining towns with the water of Tolman's Pond and Oyster River Pond for domestic purposes, the extinguishment of fires, and the supply of shipping in Rockland harbor. By bill in equity the plaintiffs ask that the defendant corporation may be perpetually enjoined from withdrawing the water or any portion thereof from Oyster River Pond, and from conveying the same to the city of Rockland or towns adjoining for domestic purposes, the extinguishment of fires, supplying shipping, and the use of manufactories, notwithstanding such right has been granted by the legislature of this state.

Both plaintiff and defendant corporation derive their franchises and authority from the state acting in its sovereign capacity.   Only such portions of their charters as are necessary to be considered in the determination of this case will be referred to.

By the provisions of c. 381, special laws of 1850, certain individuals therein named, with their associates and successors, were constituted a corporation by the name of the Rockland Water Company, "for the purpose of conveying to the village of Rockland, a supply of pure water for domestic purposes, including a sufficient quantity for the extinguishment of fires, and the supply of shipping in the harbor of Rockland."

The third section of said act reads thus: "Said corporation is hereby authorized for the purposes aforesaid, to take, hold and convey to, into and through the said village of Rockland, the water of Tolman's Pond, so called, situated in Rockland and Camden, by pipes sunk below the bottom of its outlet; and may also take and hold by purchase or otherwise, any land or real estate necessary for laying and maintaining aqueducts for

conducting and discharging, disposing of, and distributing water, and for forming reservoirs. But nothing in this act shall be taken or construed to prevent the owners of mills, or of mill privileges on the stream flowing through the outlet of said pond, from using the water thereof in the same manner that they now do or have heretofore done ; but said mill owners shall not nor shall any other person or persons, be permitted, either by cutting below the pipes of said corporation, or in any other way to withdraw the water or obstruct the water works of said corporation."

There are other provisions authorizing the construction of an aqueduct from Tolman's Pond through the city of Rockland, and for securing and maintaining reservoirs, and distributing water by means of pipes throughout the city ; for regulating its use and establishing rents ; for the payment of damages accruing to mill privileges and mill owners on the stream flowing through the outlet of the pond, and for the taking of land or excavating through the same for the purpose of laying down pipes.

Under the authority thus granted this corporation constructed works and introduced water into the city.

By a subsequent act of the legislature, (c. 79, Special Laws of 1861,) amendatory of the plaintiffs' charter, this company was authorized "to take, hold and convey," in the manner provided in the original act, "as well the water of Oyster River Pond in Camden, as of Tolman's Pond, into and through the city of Rockland and town of Thomaston, and also from the city of Rockland into the towns of Camden and South Thomaston, not exceeding one mile from the boundary line of said Rockland ; and the corporation shall have the same rights, powers and privileges and be subject to the liabilties, limitations and conditions and be answerable to parties injured thereby in the same manner in respect to taking and conveying the said water, as are provided for in said act, in respect to taking and appropriating the water of Tolman's Pond."

The second section of this act is in these words : "The said corporation is hereby empowered to take, use and appropriate water from both or either of said ponds, for supplying the

people of said city and towns with pure water and for all necessary and useful purposes subject to the liabilities provided for by said act."

In 1885, the legislature granted an act of incorporation to the defendant company by the name of the Camden and Rockland Water Company, "for the purpose of conveying to and supplying the towns of Camden, Thomaston, South Thomaston and the city of Rockland with pure water for domestic and municipal purposes, the extinguishment of fires, supplying of shipping and the use of manufactories."

By the provisions of this act the defendants are authorized, for the purposes aforesaid, "to take, detain and use the water of Oyster River Pond and all streams tributary thereto in the town of Camden," etc. Authority is also given for erecting and maintaining dams and reservoirs, laying down and maintaining pipes and aqueducts necessary for accumulating, conducting, discharging, distributing and disposing of water and forming proper reservoirs, for taking and holding by purchase or otherwise lands or real estate necessary therefor, and for the payment of damages for property taken.

Prior to the filing of the plaintiffs' bill, the defendants had purchased iron pipe, castings and materials necessary for the construction of their works, and had entered upon the construction of the same. They had also entered into a written contract with the city of Rockland for the term of ten years, to supply the city with pure water for domestic and municipal purposes and the extinguishment of fires. The defendants have since completed their works and extended them into the towns of Camden and Thomaston, and are supplying the citizens of Rockland, Rockport, West Camden and Camden village with pure water.

The plaintiff corporation has never used or undertaken to use or appropriate the water of Oyster River Pond, and the case shows that the supply in Tolman's Pond is sufficient for all its purposes.

The question which is presented to the court, under the claim set up by the plaintiffs, involves the validity of the charter of

the defendant corporation — whether the act of incorporation authorizing the defendants to use the water of Oyster River Pond for the purposes named is valid, or void as impairing the obligation of contract between the state and the plaintiff corporation.

This act authorizing the defendants to supply the citizens of Rockland with pure water appertains to purposes of public utility. It emanates from the legislative power of the state, and must be held to have the force of law, unless in passing it the legislature exceeded its powers, or it is found to be in violation of · some provision of the constitution of the state or United States.

The contention in behalf of the plaintiffs is, that the acts of 1850 and 1861, together with what was done in pursuance of the same, constituted an executed contract which is binding on the state, and that the subsequent grant from the legislature of the defendants' franchise, rights and privileges, impairs the obligation of that contract, and brings the case within the contract clause of the constitution of the United States, (Art. 1, § 10,) and of this state. (Art. 1, § 11.)

Unquestionably the state in the exercise of her sovereignty may contract like an individual and be bound accordingly. The cases are numerous in support of this principle. For more than seventy years it has been settled in this country that acts of incorporation, when granted upon a valuable consideration, partake of the nature of contracts within the meaning of that clause of the constitution of the United States which declares that no state shall pass any law impairing the obligation of contracts. *The Binghamton Bridge*, 3 Wall. 73; *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 527; *State* v. *M. C. R. R. Co.* 66 Maine, 494; *Wilmington Railroad* v. *Reid*, 13 Wall. 266; *Stone* v. *Mississippi*, 101 U. S. 816; *State* v. *Noyes*, 47 Maine, 205. This principle was settled many years ago in *Dartmouth College* v. *Woodward*, 4 Wheat. 518. And when rights have become vested under them, the authority of the legislature to disturb those rights is at an end; nor can any subsequent act control or destroy them, unless such power is reserved in the act of incorporation, or, what is· equivalent, in

some general law in operation at the time the act was passed. *Holyoke Company* v. *Lyman*, 15 Wall. 511; *Tomlinson* v. *Jessup, Id.* 457.

The question, therefore, to be determined in cases of this kind, where legislative interference is claimed, is whether such interference does in fact impair the obligation of the contract. For there may be legislation such as to injuriously affect the interests of those with whom such contract exists, and yet impair no obligation of contract. Thus it has been held that where a state by act of incorporation confers no exclusive privileges to one company, it impairs no contract by incorporating a second one with powers and privileges which necessarily produce injurious effects and consequences to the first. *Turnpike Company* v. *State of Maryland*, 3 Wall. 210. The misfortunes which follow in such cases, as the court aptly remarks in that case, "may excite our sympathies, but are not the subject of legal redress."

Such was the doctrine laid down in *Charles River Bridge* v. *Warren Bridge, supra*; and which from that day to this has been sustained by the courts of last resort in this country. *Union Bridge Co.* v. *Spaulding* 63 N. H. 298; *Tuckahoe Canal Co.* v. *Tuckahoe R. R. Co.* 11 Leigh (Va.), 42. The recent cases of *Lehigh Water Co's. Appeal*, 102 Penn. St. 515, 528, and *Lehigh Water Co.* v. *Easton*, 121 U. S. 391, are directly in point.

In considering the question whether the legislature has transcended its powers by the act of incorporation of the defendant company, with the rights and privileges therein contained, it becomes necessary to construe the legislative acts under which the plaintiffs assert their claim of exclusive right. For, notwithstanding the plaintiffs' act of incorporation became a contract between the state, acting in its sovereign capacity, and the corporation, founded upon mutual considerations, yet, if no exclusive right was conferred by legislative grant, such as the plaintiffs claim, then the act of the legislature incorporating the defendant company is valid, because no obligation of contract is thereby impaired. *Bridge Proprietors* v. *Hoboken Co.* 1

Wall. 145; *Lehigh Water Co.* v. *Easton*, 121 U. S. 391. Nor will equity interfere by injunction to restrain the operations of persons claiming the right to exercise a similar franchise under legislative authority. High on Injunc. § 902.

What construction, then, is to be given to the plaintiffs' charter? Does it in terms or by necessary implication confer those exclusive rights asserted by the plaintiffs? While it is the accepted doctrine that all grants are to be construed according to the intention of the parties, yet there are certain general rules of construction by the light of which such contracts are to be examined. These rules are well settled by numerous authorities. One is, that in all grants by the government to individuals or corporations, of rights, privileges and franchises, the words are to be taken most strongly against the grantee, contrary to the rule applicable to a grant from one individual to another. Another rule is, that one who claims a franchise or exclusive right or privilege in derogation of the common rights of the public, must prove his title thereto by a grant clearly and definitely expressed, and cannot enlarge it by equivocal or doubtful provisions, or probable inferences. "Every reasonable doubt is to be resolved adversely. Nothing is to be taken as conceded but what is given in unmistakable terms, or by an implication equally clear. The affirmative must be shown. Silence is negation, and doubt is fatal to the claim. This doctrine is vital to the public welfare." *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 666. "Repeated decisions of this court," remarks Mr. Justice CLIFFORD in *Holyoke* v. *Lyman*, 15 Wall. 512, "have established the rule, that whenever privileges are granted to a corporation, and the grant comes under revision in the courts, such privileges are to be strictly construed against the corporation and in favor of the public, and that nothing passes but what is granted in clear and explicit terms. Whatever is not unequivocally granted in such acts is taken to have been withheld, as all acts of incorporation and acts extending the privileges of corporate bodies are to be taken most strongly against the corporations." *Rice* v. *Railroad Co.* 1 Black. 380; *Newton* v. *Commissioners*, 100 U. S. 561; *Charles River Bridge* v.

*Warren Bridge, supra*; *Commissioners, &c.* v. *Holyoke Water Power Co.* 104 Mass. 449; *Attorney General* v. *Jamaica Pond Aqueduct Co.* 133 Mass. 365.

Applying the foregoing rules to the charter of the plaintiff corporation, and the amendatory act of 1861, the result is adverse to the plaintiffs' claim. No language expressly conferring any exclusive right is to be found in either act. The word exclusive no where appears. Neither do any words synonymous therewith. Nor is there in either of the acts anything in terms prohibiting the legislature from chartering a rival corporation. If the plaintiffs have an exclusive right to the water in either of those ponds, or if the legislature is prohibited from granting a charter to a rival corporation with similar rights, it must result from inference or implication. This corporation was created for a definite and specific purpose — for conveying to the city of Rockland a supply of pure water. That supply was for purposes expressly limited. The language of the charter is plain and clear upon that point. It was to be "a supply of pure water for domestic purposes, extinguishment of fires, and the supply of shipping in the harbor of Rockland." The water which, by the terms of the charter, the company was authorized to take and use was for certain specific and defined purposes, and beyond that the plaintiffs were not authorized to go. By that charter they had no right to take or use the water for the purpose of propelling machinery. The right which they acquired from the state was a franchise right to so much water as was necessary for the "purposes aforesaid." When those purposes were fulfilled or satisfied, this company could not lawfully hold the whole pond and thus eliminate the express provision of the legislature limiting their rights. This franchise right was not an exclusive right — a right by title or property right to the entire body of water of Tolman's Pond,— but only to so much thereof as was required for those purposes specified in the charter. Any other construction would render nugatory the limitation by which the company was prohibited from using the water for the purpose of propelling machinery.

Among numerous authorities which might be cited sustaining these views, the case of *Bailey* v. *Woburn*, 126 Mass. 420, furnishes an illustration. There the town of Woburn by special act of the legislature was authorized "to take, hold and convey to, into and through said town the waters of Horn Pond, so called ; in Woburn, or the waters of any other pond in Woburn," for the purpose of supplying its inhabitants with pure water. In that case as in the one before us an exclusive right to all the water in the pond was claimed, but the court held otherwise, saying : "But this construction is not correct. The town can take only so much water as is required for the purposes named in the act."

But in support of their claim of exclusive right to the water of Tolman's Pond, the plaintiffs rely upon the language of the last clause of section three which is in these words : "But nothing in this act shall be taken to prevent the owners of mills, or of mill privileges on the stream flowing through the outlet of said pond, from using the water thereof in the same manner that they now do or have heretofore done ; but said mill owners shall not, nor shall any other person or persons, be permitted, either by cutting below the pipes of said corporation or in any other way to withdraw the water or to obstruct the water works of said corporation "

Conceding to the plaintiffs the most favorable construction which this language warrants, yet we are inclined to the opinion that no such exclusive rights are reserved to the plaintiffs as contended for. This clause in the section referred to has particular reference to the rights and duties of the owners of mills and mill privileges upon the stream flowing through the outlet of the pond. The language employed shows that it was the purpose of the legislature to protect this company against the acts of the mill owners upon the stream. This clause in the section has reference to a particular class of individuals. It defines their rights, permitting them to use the water naturally flowing through the outlet of the pond, but declares that they shall not, either by cutting below the pipes of the corporation or in any other way withdraw the water or obstruct the water works of

said corporation. In order therefore to effectually guard the corporation against any person representing such mill owners, whether servants or employes, not only the mill owners but all persons are prohibited from doing it by cutting below the pipes or in any other manner. The language of the prohibition in its broadest and most general sense, if standing alone, would have a very different signification from that in the connection in which it is found. In this connection it, in terms, includes "any other person or persons," prohibiting them "either by cutting below the pipes of said corporation, or in any other way, to withdraw the water or to obstruct the water works of said corporation." But these general words, in the connection in which they are used, undoubtedly refer to the particular class or subject matter in question, rather than indicate an intention of depriving the legislature of the right to grant the use of this water, not required for the purposes named, if public necessity should require it. The maxim, *noscitur a sociis*, may well be applied here. It is frequently applied in the construction of statutes, the meaning of words, and consequently the intention of the legislature, being ascertained by reference to the context. In accordance with this principle it is laid down in the text books and decisions that "language, however general in its form, when used in connection with a particular subject matter, will be presumed to be used in subordination to that matter." Story's Agency, § § 21, 62. *Emerson* v. *E. & N. A. Railway*, 67 Maine, 393 ; *Marston, Petitioner*, 79 Maine, 36 ; Broom's Legal Maxims, 523\*. In *Regina* v. *Cheworth*, 4 Best & Smith, 932, (116 E. C. L. 930,) speaking of this principle COCKBURN, C. J., says : "Then there is a general expression 'other person whatsoever;' but, according to a well established rule in the construction of statutes, general terms following particular ones, apply only to such persons or things as are *ejusdem generis* with those comprehended in the language of the legislature." So in *Allen's Appeal*, 32 P. F. Smith, (Pa.) 302, the words of an act giving a preference for wages to persons employed "in any works, mines, manufactory or other business," &c. were construed to apply only to any other business *ejusdem generis*.

By the amendatory act of 1861, the plaintiff corporation was authorized to take, hold and convey. "in the manner provided for" in the original charter, "as well the water of Oyster River Pond in Camden as of said Tolman's Pond," and was to have the same rights, powers and privileges; and be subject to the same liabilities, limitations and conditions, and be answerable to parties injured thereby in the same manner in respect to taking and conveying the said waters, as are provided for in said act, in respect to taking and appropriating the water of Tolman's Pond." Authority is also granted "to take, use and appropriate water from both or either of said ponds, for supplying the people of said city and towns with pure water," etc.

Inasmuch as the controversy between the parties is in reference to the defendants' use of the water in Oyster River Pond, the language of this act is important in determining the intent of the legislature, and ascertaining the plaintiffs' rights therein.

The plaintiffs' claim of exclusive right to this water is based upon what they assert to be their rights by legislative grant in Tolman's Pond, for by the act of 1861, they are authorized to take, hold and convey the water of Oyster River Pond only "in the manner" and "with the same rights, powers and privileges" as are provided in the original act with reference to the water of Tolman's Pond.

If the plaintiffs' position is correct, that an exclusive right to the water of Oyster River Pond is granted by the provisions of the act of 1861, then all the water of this pond became theirs by force of the act itself, excluding necessarily the idea of any future "taking and appropriating" by them. But the legislature in explicit terms refers to the plaintiffs as "taking and appropriating"—"to take, use and appropriate water from"—language entirely repugnant to and inconsistent with the idea that the title to all this water was vested in them and required no act on their part to reduce it to possession. Webster defines pond as "a confined, or stagnant, body of fresh water." It is the body of water which composes a pond. The legislature has authorized the plaintiffs "to take, use and appropriate water *from*" Oyster River Pond, for the purposes designated,— language

implying separation, as well as future action on the part of the plaintiffs, rather than immediate title to the whole *corpus.* It cannot, therefore, by any fair construction be said that the legislature intended to grant to the plaintiffs the absolute title to, or property in, the water of this pond with no further act to be done by them. Such intention must be clearly expressed or necessarily implied to have that effect, and not be left to be discovered by astute construction and lame inferences. Had it been the intention of the legislature to grant exclusive privileges, it could have been easily done in clear and definite language instead of being left to be inferred. On the other hand the language of the act clearly negatives any such intention. It was a franchise right only which was granted by the state, and which authorized this corporation "to take, use and appropriate" so much of the water from this pond as might be required for the particular purposes named in the act. *Bailey* v. *Woburn, supra.* In so much only as was thus required, taken and appropriated would the plaintiffs have a vested right.

There was no surrender on the part of the state of the right to grant other franchises of a similar character, if the interests or necessities of the public required it; and hence there was no impairing of the obligation of any contract with these plaintiffs in granting to this defendant corporation the franchise rights which they possess.

It will be observed that the authorities to which our attention has been called, where the court has interfered to protect grants or franchises, the language of the acts has provided in explicit terms that the grant was exclusive. They are not analogous to the case at bar. They are *Piscataqua Bridge* v. *N. H. Bridge*, 7 N. H. 35; *West River Bridge Co.* v. *Dix*, 6 How. 530; *Boston and Lowell Railroad* v. *Salem and Lowell Railroad*, 2 Gray, 1; *The Bridge Proprietors* v. *The Hoboken Co.* 1 Wall. 116; *The Binghamton Bridge*, 3 Wall. 53, 73; *New Orleans Gas Co.* v. *Louisiana Light Co.* 115 U. S. 650; *New Orleans Water Works Co.* v. *Rivers, do.* 674; *Louisville Gas Co.* v. *Citizens' Gas Co. do.* 683, 687; *St. Tammany Water Works* v. *New Orleans Water Works*, 120 U. S. 64. None of

these cases militate against the doctrine expressed · in this opinion.

The facts before us show that at no time since the organization of the plaintiff corporation has there been a scarcity of water in Tolman's Pond, or any necessity of connecting the two by aqueduct or otherwise to increase the supply in that pond. On the contrary it appears that there has been, during all these years, an average depth of about six feet of water above the plaintiffs' outlet pipe. This pond has an area of three hundred and thirty acres, with a yielding capacity of four and a half million gallons in every. twenty-four hours. Large quantities have continually run to waste from the outlet of the pond, and the evidence is conclusive that there has always been much more water than has been required for the purposes of the plaintiffs' grant.

Oyster River Pond lies three miles distant from the other, and has an area of one hundred and five acres, with a daily yielding capacity of one million gallons.

More than twenty-five years have elapsed since the privileges, conferred by legislative enactment, were given to the plaintiffs, and yet no necessity has been shown, or attempt been made by them, to take or use the water of Oyster River Pond. Nor do the facts show that the defendants, in the exercise of their franchise rights, are using any water necessary for the plaintiffs' works. They claim no rights to the water of Tolman's Pond. · That is left to the entire use of the plaintiffs for the purposes set forth in their charter.

The plaintiffs' charter was granted after the enactment of the general statute of 1831, c. 503, (R. S. c. 46, § 23,) reserving to the legislature the power to amend, alter or repeal at pleasure all acts of incorporation afterwards passed, as if they contained express provision to that effect, unless there should have been inserted therein an express limitation to the contrary. But we do not, in the view we have taken of the case, consider it necessary to decide how far the rights of either party might be affected by this statute. It is not necessary in the determination of this case upon the facts presented.

There are no grounds upon which the plaintiffs are entitled to the relief which they claim.

*Bill dismissed with costs for defendants.*

PETERS, C. J. WALTON, VIRGIN, LIBBEY and HASKELL, JJ., concurred.