52  577
178s 309

## City of Carlyle v. The Carlyle Water, Light & Power Company.

1. WATER COMPANIES—*Business of, Impressed with a Public Interest.*—The proprietors of a water supply system, carrying on a business which is impressed with a public interest, must serve all who apply on equal terms and reasonable rates.

2. CITIES AND VILLAGES—*Power to Contract for Water.*—The authority to contract, under Sec. 1 of the act to enable cities and villages to contract for a supply of water for public use, for a period not exceeding thirty years, and to levy a tax to pay for water so supplied (Laws 1871-2, 271), does not necessarily imply that the price of the supply should be fixed for the entire period, but that the supply should be provided for the entire time, the price to be determined from time to time, or on failure to agree, to be settled by the rules of the common law.

3. CITIES AND VILLAGES—*Contracts for Water Supply.*—The contract by a city for a supply of water for public use for a period not exceeding thirty years, under the act of 1872 (Laws 1871-2, 271), is in the nature of long time contracts for certain articles or merchandise at market rates, not unusual in large transactions, but which are none the less contracts in the full legal sense of the term. The mere use of the term does not, of itself, necessarily signify that it is to be given an unrestricted

578    APPELLATE COURTS OF ILLINOIS.

VOL. 52.]    City of Carlyle v. Carlyle Water, Light & Power Co.

meaning. On the contrary it should be restricted in its scope, so as to apply only to the subject-matter intended by the legislature.

4. CITIES AND VILLAGES--*Contract Fixing Water Rates.*—A contract by the city for a supply of water for public use, under the act of 1872, for a period not to exceed thirty years (Laws 1871-2, 271), which fixes a maximum rate for supplying the inhabitants of the city with water, in so far as it fixes a price for the entire period, is not binding on the city for the period named, but is binding until changed, as provided in the act approved June 6, 1891 (Laws 1891, 85), providing that in case unreasonable rates are fixed, the same may be revised and determined by the Circuit Court of the county, etc.

**Memorandum.**—Assumpsit. Appeal from the Circuit Court of Clinton County; the Hon. ALONZO S. WILDERMAN, Judge, presiding. Heard in this court at the August term, 1893, and affirmed. Opinion filed March 23, 1894.

The statement of facts is contained in the opinion of the court.

APPELLANT'S BRIEF, J. J. McGAFFIGAN AND B. H. CANBY, ATTORNEYS.

" Whatever tends to prevent competition between those engaged in a public employment or business, impressed with a public character, is opposed. to public policy, and, therefore, unlawful. Whatever tends to create a monopoly is unlawful as being contrary to public policy." 1 Addison on Cont. 743; Greenhood on Public Policy, pages 180, 643, 654, 655, 670; Morris Run Coal Co. v. Barclay Coal Co., 68 Pa. St. 173; Craft v. McConoughy, 79 Ill. 346; Central R. R. Co. v. Collins, 40 Ga. 582; Hazelhurst v. Savannah R. R. Co., 43 Ga. 13; Trans. Co. v. Pipe Line Co., 22 W. Va. 600; The People ex rel. v. Chicago Gas Trust Co., 130 Ill. 293.

No legislative body can so part with its powers by any proceeding as not to be able to continue the exercise of them again and again, as often as the public interests require. Such a body has no power, even by contract, to control and embarrass its legislative powers and duties. Cooley's Const. Lim. 206.

It has been decided in many cases that a municipal corporation can not, by contract or other act, abrogate or

abridge its own legislative or discretionary powers.   State of N. Y. v. The Mayor of N. Y., 3 Duer, 131; Gale v. Kalamazoo, 23 Mich. 344; Presbyterian Church v. Mayor, 5 Cow. 538; Davis v. Mayor, 14 N. Y. 506; Mihau v. Sharp, 17 Barb. 435; East Hartford v. Hartford Bridge Co., 10 How. 535; State v. Cincinnati Gas. L. Co., 18 Ohio, 262; Reynolds v. Shreveport, 13 La. Ann. 426.

VAN HOOREBEKE & FORD and M. P. MURRAY, attorneys for appellee.

MR. JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

The appellee obtained a judgment of $9,448.60 against the appellant for the rental price, as fixed by an ordinance, of forty-three fire hydrants.   The finding of facts by the court is sustained by the record and all material questions of law raised by appellant except one, have been determined in suits between the same parties in regard to the same subject-matter; see 31 Ill. App. 329, 36 Ill. App. 28, 140 Ill. 445.   The ordinance upon which this suit is based, is set out in full in 31 Ill. App., *supra.*   It was passed on the 26th day of October, 1886, and the waterworks thereby authorized were completed according to contract on the 16th day of September, 1887, as held in 31 Ill. App.   On the 26th day of May, 1888, appellant passed another ordinance, notice of which was served upon appellee, refusing to take or use any water for public purposes supplied by appellee, and none has been taken for that purpose since that time by the city's authority or consent.   The original ordinance granted the right to the assignee of appellee by Sec. 1, to use the streets and alleys and other public ways and grounds of the present and future limits of the city of Carlyle for the purpose of laying down pipes for the conveyance of water in and through said city for the use of said city and its inhabitants.   It further provides as follows :   " Sec. 2.   And said company, its successors and assigns, shall have the exclusive privilege of laying down pipes for conveying water in said city for the use of said city and its inhabitants for the term

580        APPELLATE COURTS OF ILLINOIS.

VOL. 52.]   City of Carlyle v. Carlyle Water, Light & Power Co.

of twenty-one years from the date of the passage of this ordinance. Sec. 9. The city of Carlyle, by its city council, for and in consideration of the obligations imposed upon said company, its successors or assigns, by the foregoing sections, hereby agree to and contract with said company, its successors or assigns, to accept the forty-three hydrants stipulated in section 5 of this ordinance for the use of said city, as soon as the same are erected, connected with the water mains and supplied with water, and otherwise conform to this ordinance. And from that day to pay said company, its successors or assigns, the sum of $48.83 per annum for each and every fire hydrant above enumerated, and for each fire hydrant attached to any extensions or additions to above system the sum of $45 per hydrant per annum for and during the term of this franchise."

The ordinance also fixed a maximum rate of charges for water supplied to the inhabitants. The new question, as presented by appellant's counsel, is that the city council, passing the ordinance, could not contract to take water for public purposes at a certain price for a period of years and thereby interfere with the legislative and governmental power of future councils over that subject. When this question was heretofore presented the courts held, under the authority of E. St. Louis v. E. St. L. G. L. & C. Co., 98 Ill. 415, that if the position was well taken, yet the city had not, by any recognized method, repudiated the contract, and that so far as executed, and the city had received the benefits thereunder, the contract was enforcible. The new ordinance of May 26, 1888, repudiating the contract made by the original ordinance, is now, for the first time, before the court, and as conceded by appellee's counsel, requires a decision of the question. The appellee contends that the city council had the power to make the contract as set out in Sec. 9 of the ordinance, under the express provisions of Sec. 1 of the act of 1872, Starr & Curtis, p. 545, which provides that "the city and village authorities * * * may contract with such incorporated company for a supply of water for public use for a period not exceeding thirty years." The

appellant contends that this statute is unconstitutional, and that it can not stand as a valid law at the same time with Sec. 1 of the act of 1891, Laws 1891, p. 85, which provides " That the corporate authorities of any city  *  *  *  in which any  *  *  *  corporation has been  *  *  *  authorized by such city  *  *  *  to supply water to such city  *  *  *  and the inhabitants thereof, be and are hereby empowered to prescribe by ordinance, maximum rates and charges for the supply of water furnished by such  *  *  *  corporation to such city  *  *  *  and the inhabitants thereof—such rates and charges to be just and reasonable, and in case the corporate authorities of any such city  *  *  *  shall fix unjust and unreasonable rates and charges, the same may be reviewed and determined by the Circuit Court of the county in which such city  *  *  *  may be." That the legislature itself would not have the power to grant the " exclusive privilege " to appellee contained in the ordinance has been in effect decided in The People ex rel. v. Chicago Gas Trust Co., 130 Ill. 268. That question, however, raised by Sec. 5 of the ordinance, is unrelated to the legal question raised by Sec. 9 of the power of the legislature of the State to delegate the authority to the city to make such a *contract* as that provided for in the act of 1872.

As is said in the Bull case, 106 Ill. at p. 348, it is not a question of exclusive right, but of right at all to make such a contract as in said act provided. The city was authorized to provide its own water supply system by the act of 1873. Chap. 24, Art. 10, Starr and Curtis, p. 544; Wagner v. City of Rock Island, 146 Ill. 139. But it was not thereby authorized to discriminate or impose exorbitant rates, for in the Wagner case it is said : " It is a rule of the common law that parties carrying on a business which is impressed with a public interest, must serve all who apply on equal terms and at reasonable rates." That appellee is impressed with such interest is clear. This leads us to a construction of the act of 1872, and a determination of the kind of contract thereby authorized to be made. In doing so it

582      APPELLATE COURTS OF ILLINOIS.

VOL. 52.]   City of Carlyle v. Carlyle Water, Light & Power Co.

is not necessary to determine the extent of the power of the legislature, which as the representative of the State is sovereign, except as restricted by constitutional limitations. The language of the act, so far as applicable to the point under consideration, authorizes cities to " contract for a supply of water for public use for a period not exceeding thirty years." It is well known such supply of water to cities is a great convenience, promotive of health, protective against the destruction of property by fire, and therefore a matter of public concern. This delegation of power to the city authorizes it to declare a stable public policy with reference thereto, which is a matter, so to speak, within one view, and provide by contract for such supply, which it must be presumed the legislature intended should be done, without interference with the exercise of governmental power by future councils, except as to such declaration of public policy and without interference with those natural laws which from time to time operate upon and affect the cost of supply and the price thereof.

If the authority " to contract" was construed to require the price of the supply for the entire period to be unalterably fixed, then as said in the 98th Ill., at p. 426, in a suit to recover the contract price of gas, where the price was fixed for a long period, " at first blush, such a contract may seem objectionable as unnecessarily tying up the hands of the city council for such a length of time." In the original opinion it was held this could not be done. The final opinion, as we understand it, does not withdraw from that view. This doctrine is reasserted in the case of Milliken v. County of Edgar, 142 Ill. 528, wherein it was held that a board of supervisors could not contract with the keeper of a poor farm for the period of three years. It is there said, at the time the contract was attempted to be made, " The members of the board of supervisors were elected annually. The board was clothed with authority to levy taxes to raise funds to support paupers, but this power was required to be exercised annually. * * * If this important power * * * may be so far delegated as was attempted in this case, the

county might be deprived, in a great measure, of one of the most important offices intrusted to its care and supervision." Several Illinois cases are cited as supporting this doctrine. The principle, that such contracts, as distinguished from contracts like those for the erection of buildings, etc., where the whole subject-matter is within one view, and relates to governmental, rather than mere contractual power, is firmly imbedded in the law of this State. This principle, however, is not a limitation upon the power of the legislature to delegate an authority to make such a contract as that provided for in the act of 1872, as we understand the effect of its provisions, considered in the light of that principle, but rather a limitation upon the power of the agent, the municipality, to make a contract not authorized by statute. The rules of law announced in the Wagner and Milliken cases, *supra,* are to be borne in mind as applicable to the character and relation of the parties to this suit, in construing the act of 1872.

It will not be presumed the legislature intended to change these wholesome rules of law, or that there is an irreconcilable conflict in the existing statutes of 1872 and 1891. Viewed from this standpoint, we hold that the authority " to contract for a supply of water for public use for a period not exceeding thirty years" does not necessarily imply that the price of the supply should be fixed for the entire period, but that the supply should be provided for the entire time, the price to be determined from time to time, or on failure to agree, to be settled by the rules of the common law. Such a contract would be like long time contracts for certain articles of merchandise at market rates, not unusual in large transactions, but which are none the less contracts in the full legal sense of that term. The mere use of the term does not of itself necessarily signify that it was to be given an unrestricted meaning. On the contrary it should be restricted in its scope, so as to apply only to the subject-matter intended by the legislature. This construction would give the company the exclusive right to supply water for public use the full period of the contract, with the

584    APPELLATE COURTS OF ILLINOIS.

VOL. 52.]   City of Carlyle v. Carlyle Water, Light & Power Co.

implication of law impressed on its business to do so at just and reasonable rates, as might be determined from time to time by the company and the respective city councils. A failure to agree on the rate or price would not relieve the city from its obligation to take water for public use, but would remit the question before the act of 1891 to the courts, to be determined according to the common law rule, after that act, according to the method therein prescribed. The ordinance upon which this action is based, also fixed a maximum rate for supplying the inhabitants of the city with water; such rates, before the act of 1891, were subject to the same common law rule and thereafter came within the provisions of that act. To hold that the price could be fixed by the ordinance for water supplied for public and private use for a period of thirty years might impose a very great burden, and result in the unjust exaction of large sums of money. It is no answer to say the inhabitants are not required to take a supply of water from the company; as well say persons are not required to patronize railroads, hackmen, ferries, etc. Neither is it any answer to say that the company would not provide such supply unless the price was fixed for the entire period; for, its business being impressed with a public interest, it could be compelled to provide such supply, on equal terms and at reasonable rates. Wagner case, *supra*. Year by year conditions and prices with respect to almost everything relating to human wants are changing, and readjustments are permitted to meet them.

Hence the rule of the common law with respect to all business impressed with a public interest. This rule applied to appellee before the act of 1891, and thereafter sustained that act. Munn v. The People, 69 Ill. 80. This construction, we believe, is in accord with the intent of the legislature. The principle of the Milliken, and other cases, harmonizes, and renders operative the two statutes, preserves private and public rights, and subserves the ends of justice. The contract, therefore, expressed in Sec. 9 of the ordinance, in so far as it fixes a price for the entire period of twenty-one years, is not binding on the city for that

period, but is binding until changed, as provided in the act of 1891, or determined to be unreasonable, as therein provided. There is no proof in this record that the price was unreasonable prior to that act, or that any attempt thereafter was made to change the rate under that act. We therefore hold: 1. That the city had no right to refuse to take the supply of water, provided by the contract. 2. That the price therein fixed must be considered reasonable, until otherwise determined as herein indicated. The judgment will be affirmed.