## Trustees of the Illinois Central Hospital for the Insane v. The City of Jacksonville.

1. MUNICIPAL CORPORATIONS—*Power to Contract—Ultra Vires.*—The powers conferred by the general statutes of this State do not in terms authorize a city to bind itself by contract to furnish water for a period of years at a fixed rate, nor is such authority implied.

2. SAME—*May Make Authorized Contracts.*—Municipal corporations may make authorized contracts, but they have no power, as a party, to make contracts or pass ordinances which shall cede away, control or embarrass their legislative or governmental powers, or which shall disable them from performing their public duties.

**Assumpsit.**—Breach of contract. Appeal from the Circuit Court of Morgan County; the Hon. CYRUS EPLER, Judge, presiding. Heard in this court at the May term, 1895. Affirmed. Opinion filed November 15, 1895.

CHAS. A. BARNES, attorney for appellants, contended that the contract sued upon is what is known as "a business contract," and one the city had full power and authority to make, and that the same is binding. There seems to be a distinction in the law between the powers of a legislative character and powers of a business nature. Every contract, or ordinance in the nature of a contract, by a municipality, does to some extent limit and control the power and authority of future councils. This is, and must be, the unavoidable result of any binding contract. Still, this power to execute a contract for buildings, fire apparatus, goods, paving, for water, for gas, for supplies, for bonds, and the like, is neither a judicial nor a legislative power, but is purely a business power. The making of such contracts is a matter delegated to the governing powers of municipalities, to be exercised according to their own discretion, and in the absence of fraud, while acting within the authority delegated to them, their action must be upheld. City of Vincennes v. Citizens Gas Light Co., 31 N. E. Rep. 573; City of Indianapolis v. Indianapolis Co., 66 Ind. 396; Dill. Mun. Corp. (3d Ed.), Sec. 473, 474; Columbus Water Co. v. City of Columbus, 28 Pac. Rep. 1097.

JOHN J. REEVE and FRED H. ROWE, attorneys for appellee, contended: that the law governing municipal corporations is very different from that of private corporations is very clear from an examination of Dillon on Municipal Corporations, Sections 66, 97, 445, 447, 457, 461 and 463, Third Edition. "Legislative powers can not be bargained or bartered away." "There is no power to make contracts or pass by-laws which shall cede away, control or embarrass their legislative or governmental powers, or which shall disable them from performing their public duties."

The contract is *ultra vires*. East St. Louis v. East St. Louis G. L. & C. Co., 98 Ill. 415; Milligan v. County of Edgar, 142 Ill. 528; Stevenson v. School Directors, 87 Ill. 255; Davis v. School Directors, 92 Ill. 294; City of Carlyle v. Carlyle Water, L. & P. Co., 52 Ill. App. 577a; Gas Light Co. v. Middleton, 59 N. Y. 228; 1 Dillon's Mun. Cor. (3d Ed.) Sec. 97 (Sec. 61, 2d Ed.); City of Quincy v. Bull, 106 Ill. 337; Beach on Public Corporations, Sec. 218–220; Cooley's Const. Limitations (6th Ed.), 261.

MR. JUSTICE WALL DELIVERED THE OPINION OF THE COURT.

The appellants brought an action against the appellee to recover damages for a breach of contract, by which the appellee undertook to furnish a supply of water to the appellants, for a term of ten years, at a fixed price. A demurrer to the declaration was sustained, and the only question argued is as to the validity of the alleged contract—that is to say, whether it is competent for a city, having a supply of water by means of a plant owned and operated by it, to make a binding agreement to furnish water for the period of ten years at a stipulated price. The general doctrine as to the purpose for which a municipal corporation is created, and the powers which it may exercise in the performance of its corporate functions, is familiar and need not be elaborately stated. It is organized for a specific and limited purpose, and it has such powers, and such only, as are given by its charter in express terms, or as are necessarily implied. Under Art. X, Ch. 34, R. S., a city may provide for a supply

Trustees, etc., v. City of Jacksonville.

of water by means of a plant of its own, or by contract with persons or private corporations, and may do all acts and make such rules and regulations for the construction, completion, management or control of the water works and the levying and collecting of water taxes, rates, or assessments, as may be deemed necessary and expedient.

By the act of 1873, Hurd's Stat., p. 300, more specific authority is given as to the construction of water works by cities, acting severally or jointly, in order "to provide a supply of water for the purpose of fire protection and for the use of the inhabitants," and by Sec. 4, the "common council of such cities   *   *   *   shall have power to make and enforce all needful rules and regulations in the erection, construction and management of such water works and the water supplied from the same.   And such cities   *   *   *. shall have the right and power to tax, assess and collect from the inhabitants thereof such tax, rent, or rates, for the use and benefit of water used or supplied to them by such water works, as the common council   *   *   *   shall deem just and expedient,"   *   *   *   "and such taxes, rents, or rates, shall be paid and collected   *   *   *   in such manner as the common council shall by ordinance direct and provide."   No other statutory provisions on the subject have been brought to our notice.

The powers thus conferred do not, in terms, authorize a city to bind itself by contract to furnish water for a period of years at a fixed rate, nor is such authority implied.   On the contrary quite a different course seems to be contemplated by which the city is to fix rates and enforce payment of the same (which are made a lien upon the premises or real estate where the water is supplied) by ordinance.   It is implied that these rates shall be reasonable, and that all consumers shall be served on equal terms.   Wagner v. City of Rock Island, 146 Ill. 139.

And it is also implied, necessarily, as we think, that the city shall have power to change the rates from time to time as circumstances may require or justify, in order to obtain sufficient revenue to maintain the property on the

one hand, and on the other, in order to serve all its patrons at reasonable rates and on equal terms. If it can be bound by such a contract as here set up, it may be bound by another much more difficult of performance, and so it may happen that by reason of improvident contracts the city may be prevented from properly performing its duty to the great mass of its patrons. One council may in this way tie the hands of its successors, to the great injury of the municipality and the public.

Generally, the courts have leaned against such powers and have been inclined to deny them unless conferred by statute, for reasons and upon considerations based on public policy, quite familiar to the profession. In Dillon on Municipal Corporations, Sec. 61, 2d Ed., it is said:

"Powers are conferred upon municipal corporations for public purposes, and as their legislative powers can not, as we have just seen, be delegated, so they can not be bargained or bartered away. Such corporations may make authorized contracts, but they have no power, as a party, to make contracts or pass by-laws which shall cede away, control or embarrass their legislative or governmental powers, or which shall disable them from performing their public duties."

If it is sound to say that the statutes referred to contemplate the making and changing of rates from time to time, whenever necessary to protect the city in its revenues, and to enable it to furnish water to all on equal terms and at reasonable rates, it must follow that the city can not, without express power, make such a contract as here set up. Or in other words, the power to make such contract is not only not to be inferred from the express terms of the charter, but the contrary is clearly implied.

It is, of course, not contended there is any such express authority.

Illustrative is the case of Milliken v. Edgar County, 142 Ill. 528, where it was held that a county board is without authority to contract for the management of the county poor house and for the care of county paupers for a period of three years, and the cases cited in the opinion, where it

had been ruled that school directors were powerless to contract with teachers for terms extending substantially beyond the current year.

We are satisfied the contract in question is *ultra vires* and the judgment will be affirmed.