OLNEY ARNOLD, *et al. vs.* THE MAYOR OF PAWTUCKET, *et al.*

PROVIDENCE—OCTOBER 4, 1898.

PRESENT : Matteson, C. J., Stiness and Rogers, JJ.

(1)  *Municipal Contracts.    Water Supply.    Delegation of Powers.*

A town was empowered by act of the legislature to supply water to a fire district, and the district was authorized to receive the same, on such terms as might be agreed upon by the town council of the town and said district.   The district was further authorized to distribute the water throughout its territory, to regulate the use thereof and determine its price.   The town (afterwards a city) and the district made a contract by which the town was to furnish the water; to collect the rates without expense to the district and to pay to the district a rebate therefrom ; to charge the inhabitants of the district the same rates, and furnish the water to them under the same regulations as applied to the citizens of the town.   This contract was for a term of ten years, and at the end of this time it was renewed for another like term ; during the seventh year of the second term the city and district attempted to rescind the contract and to make another with substantially the same provisions, for thirteen years:—

*Held*, that the agreement, in effect, delegated to the city the powers which were conferred upon the district by the act.

(2)  *Construction of Statutes.*

*Held*, further, that these powers were intended for the benefit of the district; that the inhabitants were beneficially interested in the exercise thereof by the district ; and that such exercise was mandatory, although the language of the act was permissive.

*Held*, further, that, as the exercise of these powers was mandatory, it could not be delegated by the district to the city.

(3)  *Ultra Vires.*

*Held*, further, that the agreement was inconsistent with the act and therefore *ultra vires* and void.

*Held*, further, that, as there was in the act no limitation of the power to contract, a new agreement might be substituted for another whose time limit had not expired, although such powers are usually strictly construed.

BILL IN EQUITY to restrain a city and fire district from executing a proposed contract relative to a public water supply. Heard on general demurrer to the bill.

MATTESON, C. J. ' This is a bill for an injunction brought by certain citizens and tax-payers of the city of Pawtucket, in behalf of themselves and all other tax-payers of the city, against the mayor, commissioners of public works and the chairman of the committee on water of that city, the city itself, and the Watchemoket Fire District. It alleges that, pursuant to a resolution of the city council of the city, the officials named as respondents are about to enter into a contract with the administrative board of the fire district, by which the city of Pawtucket is to supply water to the district and its inhabitants; that neither the city nor the district has authority to enter into the proposed contract, and that, if the contract is entered into, confusion, uncertainty and litigation will result, to the injury of the city and of the complainants and others as tax-payers, for which there can be no adequate remedy at law.

The respondent, the mayor of Pawtucket, has demurred to the bill, and the case is before us on this demurrer.

(1) The complainants contend that the proposed contract is *ultra vires*, (1) because it provides that the city shall furnish water directly to the inhabitants of the fire district, instead of to the district itself; (2) because it provides that the city, and not the district, shall regulate the rates to be charged for water furnished ; and (3) because it delegates to the city the power to establish rules and regulations as to the mode of using the water, which the charter of the district reserves to the district.

We think these contentions must be sustained. The only authority which the city has to supply water to the fire district is contained in the act incorporating the district, passed June 13, 1878 (Schedule of May Session, 1878, 38), sections 9 and 10 of which are as follows :

"SEC. 9. Said district is hereby authorized to receive water from the city of Providence or the town of Pawtucket,

upon such terms as may be agreed upon by the city council of said city or the town council of said town and said district, and said city and town are hereby authorized and empowered to supply water to said district and make such agreement.

SEC. 10.    Said district may distribute the water throughout the district or authorize the same to be done, regulate its use and the price to be paid therefor within and without the district within the limits of the town of East Providence."

The second paragraph of the proposed agreement provides that the city of Pawtucket shall furnish all water needed or demanded by the fire district and its inhabitants within its territory, and also for such purchasers of or contractors for water as the district may contract with outside of the district, and within the town of East Providence, for domestic, manufacturing and fire purposes.,

Paragraph 3 provides that the city shall collect the water rents which may accrue for the use of water, without expense to the district, payment for which is to be made to the city treasurer.

Paragraph 4 provides that the city shall pay to the district thirty per cent. of the gross amount of all water rents collected under the agreement, except on the amount received for the supply of fire hydrants, drinking fountains and street sprinklers.

Paragraph 6 provides that for all the water furnished to and used by the inhabitants of the district and town of East Providence there shall be paid, on the first day of May in each year, to the city, water rents and charges at the same rates and prices as are at the date of the agreement or may at any time during the continuance of the agreement be charged by the city to its inhabitants, and under the same rules and regulations, so far as applicable, as are or may be at any time established for the like use of water in the city.

(3)    It is evident that the scheme of the act, as shown by the sections quoted, is that the district itself, as a corporate body, should receive the water under any agreement which it should make, and should itself regulate both its use and the price to be paid for such use; while the scheme of the

agreement is that the city of Pawtucket shall furnish the water, not to the district itself, but to its inhabitants, charging to and collecting from them water rents for the use of the water, at the same rates charged by the city to its own inhabitants, and under the same rules and regulations as are or shall be established for a like use of the water in the city. The agreement, in effect, delegates the powers which are conferred upon the district by the act to the city, and thus substitutes, in place of the district, the city of Pawtucket to furnish water to the inhabitants of the district, and to regulate its use and the price to be paid therefor within the district. We think that it is clear, therefore, that the act and the agreement are inconsistent, and hence, as the only authority which the parties have to contract is found in the sections of the act which we have quoted, that the proposed agreement is, as contended by the complainants, *ultra vires* and void.

(2)     Moreover, such powers as those to regulate the use of the water and to fix the price to be paid for the use, conferred on the district, are powers, as contended by the complainants, in the exercise of which the inhabitants of the district are especially interested and which were intended for their benefit. As such inhabitants, many of them would be voters within the district, and would therefore have a voice in determining from time to time the regulations which should govern the distribution of the water and the rates which should be charged for its use. The power thus vested in the district affords to its inhabitants security that the regulations for the use of the water shall not be burdensome, nor the rates charged unnecessarily high. Being powers, then, in the exercise of which the inhabitants of the district are beneficially interested, the exercise of such powers is mandatory, and this, too, though the language of the statute is permissive and not imperative. *Phelps* v. *Hawley*, 52 N. Y. 23; *Mason* v. *Fearson*, 9 How. 248; *Mayor* v. *Furze*, 3 Hill 612; *Leavenworth &c., Railroad* v. *County Court*, 42 Mo. 171; *Steines* v. *Franklin County*, 48 Mo. 167; *Milling Co.* v. *Lane County*, 5 Ore. 265; *Mayor* v. *Marriott*, 9 Md. 160;

*County Commissioners* v. *Duckett*, 20 Md. 468. If mandatory on the district, it necessarily follows that the district cannot delegate the exercise of such powers to the city of Pawtucket. The rule that powers of this nature cannot be delegated has been so often applied as to have become almost elementary. The following cases cited by the complainants are illustrations of its application: *Birdsall* v. *Clark*, 73 N. Y. 73; *Ruggles* v. *Collier*, 43 Mo. 353; *St. Louis* v. *Clemens*, 43 Mo. 395; *Thompson* v. *Schermerhorn*, 6 N.Y. 92; *Lauenstein* v. *Fon du Lac*, 28 Wis. 336; *Franke* v. *Water Supply Co.*, 11 S. W. (Ky.) 432; *Hickey* v. *Railroad*, 6 Ill. App. 172; *Foss* v. *Chicago*, 56 Ill. 354; *Trustees* v. *Jacksonville*, 61 Ill. App. 199; *Lord* v. *Oconto*, 47 Wis. 386.

The point is taken that, as the city in May, 1890, exercised the power conferred by the act of incorporation, by entering into a contract with the district to furnish water to the district for ten years from that date, which term will not expire until May, 1900, it thereby exhausted the power conferred upon it until the ten years during which the contract is to run has terminated. There is, however, no limitation in the act of the power to contract, and in the absence of such limitation we see no reason, though such powers are usually strictly construed and though the contracting parties are corporations, why they may not modify an existing contract or substitute a new one in the place of it, precisely in the same manner as natural persons, provided only that such modification or new contract be reasonable and proper.

It will be noticed that in section 9 of the act of incorporation of the fire district the terms upon which the town of Pawtucket was to furnish water to the district were to be agreed upon on the part of the town by the town council. The questions arise whether this power on the incorporation of the city of Pawtucket passed to the city council or to the board of aldermen, and, unless it did to one or the other, whether there is now any body or officer authorized to make such agreement on behalf of the city. These questions have not been argued, and we suggest them to counsel for their consideration.

Demurrer overruled, and preliminary injunction heretofore granted made permanent.