THE CITY OF DANVILLE

v.

THE DANVILLE WATER COMPANY.

*Opinion filed February 17, 1899.*

1. CORPORATIONS—*provisions of Incorporation act are part of charter of corporation.* The provisions of the general Incorporation act enter into and form a part of the charters of all corporations organized thereunder.

2. SAME—*corporation agrees to be regulated by the legislature.* By organizing under the general Incorporation act a corporation agrees to submit itself to such regulations and provisions as the legislature may deem it advisable to make under section 9 of such act. (Rev. Stat. 1874, p. 288.)

3. SAME—*legislature has reserved right to regulate water rates.* The right of the legislature to regulate the rates at which water shall be supplied to the public by a water company organized under the general law is reserved by section 9 of the Incorporation act.

4. CONSTITUTIONAL LAW—*act of 1891 empowering city to fix water rates is constitutional.* The act of June 6, 1891, (Laws of 1891, p. 85,) empowering cities in which a private corporation has been or may be authorized to supply water for public use to fix reasonable water rates, is constitutional and valid.

5. MUNICIPAL CORPORATIONS—*ordinance fixing water rate for thirty years is not binding on city.* A city authorizing a private corporation to construct water-works and contracting for a supply of water for thirty years, as authorized by the act of April 9, 1872, (Rev. Stat. 1874, p. 252,) and section 1 of article 10 of the City and Village act, (id. 240,) has no power to bind itself by fixing a rate for such supply for the entire period. (PHILLIPS, J., dissenting.)

6. SAME—*city may reasonably reduce previous water rates fixed by ordinance.* By ordinance passed under the act of June 6, 1891, a city which has previously provided for a supply of water for thirty years by an ordinance fixing the rate for the entire period may make a reasonable reduction for future supply. (PHILLIPS, J., dissenting.)

7. PLEADING—*when demurrer should not be carried back to declaration.* A demurrer to special pleas, which admit part of the amount claimed in the declaration as an entire indebtedness, cannot be carried back and applied to an alleged defect in the declaration, which would affect the indebtedness admitted as well as that denied.

CRAIG and CARTWRIGHT, JJ., dissenting.

WRIT OF ERROR to the Circuit Court of Vermilion county; the Hon. F. BOOKWALTER, Judge, presiding.

This is an action of assumpsit, brought by the defendant in error, the Danville Water Company, against the plaintiff in error, the city of Danville, to recover from the city for a supply of water, furnished to the city by the water company through its hydrants for the quarter beginning May 1, 1895, and ending August 1, 1895, the declaration charging that, according to the terms of the ordinance under which the water company claims to have constructed its water-works and furnished water to the city, the city became and was liable to pay to the company $2620.62 on August 1, 1895.

The city filed three special pleas, all of which admitted a liability to pay to the company $1930.00 of the amount claimed in the declaration, but denied the liability of the city to pay the full amount, upon the ground that, by the terms of ordinances passed by the city subsequent in date to the original ordinance under which the company began to furnish water to the city, the rates which the city was bound to pay as rentals for the hydrants had been reduced.

Demurrers were filed to each and all of the special pleas. These demurrers were sustained by the trial court. The defendant below, the city, then made a motion to carry the demurrers back to the declaration, upon the alleged ground that the declaration was defective in two respects: first, because it did not aver that, either before or at the time of making the promises relied on in the declaration, or before or at the time of incurring the indebtedness mentioned therein, any provision was made for the collection of a direct annual tax to meet such indebtedness as it fell due, or, in other words, because the declaration did not aver that there had been any compliance with the requirements of section 12 of article 9 of the constitution; and second, because the declaration failed to allege that, at the time of entering into the alleged contracts, any appropriation had been previously made concerning the expense incurred, as required by

section 4 of article 7 of part 1 of the City and Village act.
The motion to carry the demurrers back to the declaration was overruled.  A motion was then made by the city
in arrest of judgment upon the ground of the alleged insufficiency of the declaration for the two reasons above
set forth.  The motion in arrest of judgment was overruled.  The city elected to stand by its pleas; and judgment by default was entered against it for $2701.00 and
costs.  The present appeal is prosecuted from the judgment so entered.

The declaration alleges that the Danville Water Company, the defendant in error, is a corporation organized
under the general incorporation laws of Illinois, for the
purpose of supplying the city of Danville, and its inhabitants, with water; and that the city of Danville, the
plaintiff in error, is a municipal corporation organized
under the general laws of the State, that is to say, under
the City and Village act.  The declaration further alleges
that, on November 9, 1882, the city council of Danville
passed an ordinance, granting to defendant in error the
privilege of constructing and maintaining water-works,
and the right to use the streets of the city for that purpose for the term of thirty years, specifying the character and capacity of the works, and the source of supply
and other details; that, by the terms of the ordinance of
November 9, 1882, the city rented of the water company
one hundred fire hydrants for the term of thirty years
at the rate of $75.00 each per year, and the city thereby
agreed to pay that sum as rent therefor during that term,
payable quarterly; and that future hydrant rentals for all
hydrants thereafter taken should be at the rate of $62.50
each per annum for the next forty hydrants, and for all
in excess of one hundred and forty, the rate should be
$50.00 each per annum for the balance of the thirty years;
that other ordinances were passed providing for extensions of water mains, and for the renting of additional
hydrants until the number reached one hundred and fifty-

eight for the balance of said term of thirty years at rates fixed in the original ordinance, except that, by an ordinance passed June 21, 1894, the rental of some of the hydrants, whose rental was fixed at $62.50 each per year, was, with the consent of the company, reduced from $62.50 to $50.00, and a reduction was made on all further hydrants from $50.00 to $40.00. The amount claimed in the declaration for the three months from May 1 to August 1, 1895, is the amount, which would be due to the company at the rates fixed by the ordinance of November 9, 1882, to-wit, $75.00 each per annum for one hundred fire hydrants, etc., except so far as such rates had been reduced with the consent of the company as above stated.

The first special plea of the city, as to all of the water company's demand except $1930.00, sets up, as a defense, that the plaintiff, the water company, was engaged in the public business of supplying water to the city and its inhabitants, and that, on January 17, 1895, the city council of Danville passed an ordinance, known as ordinance No. 517, under the authority of an act approved June 1, 1891, entitled "An act to enable cities * * * incorporated under any general or special law of this State to fix the rates and charges for the supply of water furnished by any individual, company or corporation to any city * * * and the inhabitants thereof," as well as under and by virtue of other full, competent and complete legal authority; and the said first special plea further alleges, that the ordinance of January 17, 1895, recites that the rates heretofore charged are excessive, that the rates therein fixed are reasonable, and that, beginning with May 1, 1895, the rates for hydrant rental shall be for the first one hundred and forty hydrants $50.00 each per annum, and for all others $40.00 each per annum, instead of $75.00 each for the first one hundred, and $62.50 each for the next twenty-one, and $50.00 each for the next nineteen, and $40.00 each for the others; that the city shall continue to take the present supply, but

will pay no more than the rates fixed in said ordinance of January 17, 1895, and making it the duty of the city clerk to notify the water company of the fact by delivering to its officers a certified copy of the ordinance within five days after it is signed; and authorizing the corporation counsel to enter the appearance of the city at the February term of the circuit court, should the water company desire to make application to have the question as to the reasonableness of the rates therein fixed determined by the court. The plea further alleges that after the approval of ordinance No. 517, a duly certified copy thereof was served on the water company within five days; and that the rates and charges for the supply of water, furnished by plaintiff to the defendant, are $1930.00 and no more.

The second special plea of the city makes substantially the same allegations as the first special plea, and further alleges that the rates charged by the company for hydrant rentals, as fixed in the ordinances set forth in the declaration, are and were in excess of the reasonable compensation therefor, and unjust, unreasonable and excessive, and that the ordinances referred to in the declaration, so far as they fixed the rate for a long term of years, were voidable at the option of the city; and that ordinance No. 517 was passed, which is set out in *hæc verba*, as in the first plea, and that notice of ordinance No. 517 was duly served on plaintiff within five days of its approval by the mayor; that plaintiff furnished the supply of water mentioned in the declaration with full knowledge of the existence of the provisions of ordinance No. 517; and that the rates fixed in ordinance No. 517 are just and reasonable; and that $1930.00 is all that is due plaintiff.

No contention is made by either party as to the third special plea of the city and, therefore, no further notice will be taken of the same.

G. F. Rearick, and Calhoun & Steely, for plaintiff in error.

W. R. Lawrence, and Remy & Mann, for defendant in error.

Mr. Justice Magruder delivered the opinion of the court:

*First*—The first question presented is this: Was ordinance No. 517, passed on January 17, 1895, a valid enactment? If this question be answered in the affirmative, then the first and second special pleas of the city presented a defense as to all of the cause of action of the water company except $1930.00; and it was error to sustain a demurrer to such pleas. To determine the question whether the ordinance of January 17, 1895, was a valid ordinance or not, it is necessary to determine whether or not the act of June 6, 1891, referred to in the statement preceding this opinion, and under and in pursuance of which said ordinance was passed, was a valid and constitutional law, so far as it applied to city ordinances passed before its enactment, which fixed particular rates or charges for water supplies.

The ordinance of November 9, 1882, provided that the defendant in error should have the right to charge $75.00 each per annum for one hundred fire hydrants for the term of thirty years, and $62.50 each per annum for the next forty hydrants, and for all hydrants thereafter furnished in excess of one hundred and forty the rate should be $50.00 each per annum. The ordinance of January 17, 1895, provided that the rates fixed by the ordinance of November 9, 1882, were unreasonable and excessive, and should be reduced to $50.00 each per annum for the first one hundred and forty hydrants and $40.00 each per annum for all others. It is claimed by the defendant in error, that the ordinance of November 9, 1882, fixing the larger rates or charges for a period of thirty years, was a contract between the city of Danville and the defend-

ant in error; and that the ordinance of January 17, 1895, which provided for the reduction of these charges, was a violation of the contract, and, therefore, was invalid. The city justifies its act in passing the ordinance of January 17, 1895, by reference to the act of the legislature, approved June 6, 1891, which has already been referred to. That act consists of one section and provides as follows: "That the corporate authorities of any city * * * now or hereafter incorporated under any general or special law of this State, in which any individual, company or corporation has been, or hereafter may be authorized by such city * * * to supply water to such city * * * and the inhabitants thereof, be and are hereby empowered to prescribe by ordinance maximum rates and charges for the supply of water furnished by such individual, company or corporation to such city * * * and the inhabitants thereof, such rates and charges to be just and reasonable. And in case the corporate authorities of any such city * * * shall fix unjust and unreasonable rates and charges, the same may be reviewed and determined by the circuit court of the county in which such city * * * may be." It is contended by the water company, that the act of June 6, 1891, in so far as it applies to the ordinance of November 9, 1882, is an invalid and unconstitutional law.

Did the city of Danville, by the passage of the ordinance of November 9, 1882, and its acceptance by defendant in error, so bind itself to pay the annual charges for water supply as therein fixed for thirty years, that the legislature was thereafter without power to pass such an act as that of June 6, 1891? In order to answer this question, it will be necessary to examine the provisions of the charter of the water company, and the provisions of the statutes authorizing cities in the State to contract with reference to water-works and water supplies.

The Danville Water Company was organized under the general Incorporation act of this State, approved April

178—20

18, 1872, in force July 1, 1872. The charter of a corpora-
tion, formed under the general Incorporation act, does
not consist of its articles of association alone, but of such
articles taken in connection with the law under which
the organization takes place. The provisions of the law
enter into and form a part of the charter. (*People ex rel.* v.
*Chicago Gas Trust Co.* 130 Ill. 268). Therefore, the provi-
sions of the general Incorporation act must be regarded
as entering into, and forming a part of, the charter of the
defendant in error. Section 9 of the general Incorporation
act provides that: "The General Assembly shall at all
times have power to prescribe such regulations and pro-
visions as it may deem advisable, which regulations and
provisions shall be binding on any and all corporations
formed under the provisions of this act." (1 Starr & Curt.
Ann. Stat.—2d ed.—p. 1006).

By organizing under the general Incorporation act,
the defendant in error agreed to submit itself to and to
be bound by such regulations and provisions as the leg-
islature should deem it advisable to make. The object
of its creation was to furnish water to the city of Dan-
ville and the inhabitants thereof. The right of the leg-
islature to regulate and provide for the rates, at which
such water should be supplied, was a right reserved by
section 9. The language of section 9 is different from,
and broader in its scope than, the language contained
in many charters, which reserve to the State the power
to repeal, alter, amend or modify the charter itself. We
apprehend, therefore, that the decisions, restricting the
power of the State as to charters which are given subject
to the right of the State to repeal, alter, amend or modify
them, do not apply to such broad language as is used in
section 9. By the terms of section 9 it is something more
than the mere right to change the charter of the corpo-
ration, which is reserved to the legislature. The author-
ity is thereby reserved to provide the regulations and
provisions, under which the corporation may proceed in

the transaction of its business. We have held, that the legislature may impose duties on corporations the same as on individuals in the absence of special enactments. We have also held, that the constitution of 1848 by implication reserved to the legislature the right to change or increase the liability of a shareholder in a corporation. (*Illinois Central Railroad Co.* v. *City of Bloomington,* 76 Ill. 447; *Weidenger* v. *Spruance,* 101 id. 278; *Diversey* v. *Smith,* 103 id. 378; *Arenz* v. *Weir,* 89 id. 25; *Butler* v. *Walker,* 80 id. 345).

It is not claimed, that the defendant in error was given the privilege, by the terms of its charter, of charging any particular fixed rate for the supply of water to the city of Danville and its inhabitants. Consequently, there is nothing in the terms of the charter itself, which conflicts with the power of the legislature to regulate the rates of such charges, provided such rates should be reasonable and fair.

The contention, however, is made that the ordinance of November 9, 1882, was a contract between the city and the water company, and that the water company, having proceeded to construct its water-works and supply water to the city in accordance with the terms of that contract, the legislature had no power, even under section 9, to change the rates already fixed. The force of this contention must depend upon the question, whether or not the city itself had the power, under the statutes of the State, to make a contract to pay for water at a fixed and unalterable rate for the term of thirty years.

It is well settled, that municipal bodies can only exercise such powers as are conferred upon them by their charters, and all persons dealing with them must see that the body has power to perform the proposed act. (*Law* v. *People,* 87 Ill. 385). Beach, in his work on Public Corporations, (sec. 554,) speaking with reference to a contract between a water company and a city for the furnishing of water by the former to the latter, says: "The city could

bind itself by such contracts only as it was authorized by statute to make. It has no power to grant exclusive privileges to put mains, pipes and hydrants in its streets, nor can it lawfully, by contract, deny to itself the right to exercise the legislative powers vested in its council." In *Syracuse Water Co.* v. *City of Syracuse,* 116 N.Y. 167, it is said: "The municipal corporation, as such, could bind itself by such contract only as it was authorized by statute to make. It could not grant exclusive privileges especially to put mains, pipes and hydrants in its streets, nor could it lawfully by contract deny to itself the right to exercise the legislative powers vested in its common council. * * * In dealing with municipal corporations, parties are chargeable with knowledge of their powers, as they are furnished only by statute."

By an act, approved April 9, 1872, in force July 1, 1872, entitled "An act to enable cities * * * to contract for a supply of water for public use and to levy and collect a tax to pay for water so supplied," it was provided in sections 1 and 2 as follows: (1) "That in all cities * * * where water-works may hereafter be constructed by an incorporated company, the city * * * authorities in such cities * * * may contract with such incorporated company for a supply of water for public use for a period not exceeding thirty years." (2) "Any such city * * * so contracting may levy and collect a tax on all taxable property within such city * * * to pay for the water so supplied." (1 Starr & Cur. Stat. p. 545). This act of April 9, 1872, conferred upon cities the power to contract with an incorporated company for a supply of water for public use for a period not exceeding thirty years. No question is made by either party to this litigation as to the validity of this act, so far as it gave the right to contract for thirty years. Counsel for the city disclaim any intention of questioning the validity of a contract to supply water for thirty years. Therefore, we pass no opinion upon this question. The contention is, that the city had

no power to make a contract to pay fixed and unalterable rates for thirty years, and not that the city did not have power to make a contract with the water company that the latter should supply water for thirty years. It is claimed, however, by the defendant in error, that, when the power to contract was given, the power to contract for the rate, at which the water should be furnished, was also given. The language of the statute does not necessarily imply the power to make a fixed rate. The authority "to contract for a supply of water for public use for a period not exceeding thirty years" does not necessarily imply, that the price of the supply should be fixed for the entire period. The supply could be made for the entire term, but the price is to be determined from time to time, and the rates to be settled by the rules of the common law. (*City of Carlyle* v. *Carlyle Water, Light and Power Co.* 52 Ill. App. 577).

The business of furnishing water to a city and its inhabitants by means of water-works, which require the use of the public streets of the city for the laying of water pipes, is a business public in its nature, and upon which a public interest is impressed. It is well settled that parties, who carry on a business which is public in its nature, or which is impressed with a public interest, must serve all who apply on equal terms and at reasonable rates. (*Wagner* v. *City of Rock Island,* 146 Ill. 139; 29 Am. & Eng. Ency. of Law, p. 12; *Munn* v. *People,* 69 Ill. 80; *Munn* v. *Illinois,* 94 U. S. 113). A business, which is thus impressed with a public interest, is subject to legislative control to the extent that it may be compelled by legislative action to furnish the supply, which it is authorized to furnish, on equal terms and at reasonable rates. (*Munn* v. *People, supra; City of Carlyle* v. *Carlyle Water, Light and Power Co. supra*). "Water companies, when actually engaged in the performance of their corporate functions, are necessarily the beneficiaries of valuable privileges from the State and subserve a public purpose. They are

to be classed as *quasi* public corporations, and are subject in their operation to the limitations and regulations, which the law imposes upon such bodies, in order that the public interest may not suffer." (29 Am. & Eng. Ency. of Law, pp. 11-13). Where a business is impressed with a public interest, the legislature has the right to fix the maximum charges. (*Budd* v. *New York*, 143 U. S. 517; *Chicago, Burlington and Quincy Railroad Co.* v. *Jones*, 149 Ill. 361).

In *State ex rel.* v. *Gas Co.* 34 Ohio St. 572, where a gas company was under a special charter empowered to manufacture and sell gas for the purpose of lighting the city of Columbus, and its grant was exclusive for a term of twenty years, but the charter contained no provision as to the price to be charged for gas, nor on the subject of meters, it was held, that the terms, upon which the corporation might be required to discharge its duties to the public, were subject to legislative supervision and control, unless it clearly appeared from the terms of its charter that it was the intention to exempt it from such interference; and the court there said: "The charter in the present instance grants to the defendant the exclusive right of supplying the city and its inhabitants with gas for a term of twenty years.   *   *   *   It is unreasonable, therefore, to infer that it was the intention of the legislature to exempt the defendant from all public control in respect to the terms, upon which it should be required to discharge its duties to the public, unless such intention is found clearly expressed in the charter. The charter expresses no such intention." In *Munn* v. *Illinois, supra*, it was held that: "Where the owner of property devotes it to a use in which the public have an interest, he in effect grants to the public an interest in such use, and must, to the extent of that interest, submit to be controlled by the public for the common good, as long as he maintains such use." (See, also, *Zanesville* v. *Gas Light Co.* 47 Ohio St. 1).

The act of April 9, 1872, is silent as to the rates to be charged for the supplying of water, and as to the mode of fixing the rates.   Where the charter of a gas or water company in a city does not expressly confer on the company the right to fix its own prices, such silence cannot be construed into a grant of the franchise to fix its own rates.   (*Zanesville* v. *Gas Light Co. supra*).   So, here, the silence of the act of April 9, 1872, as to the rates to be charged for the supply of water does not necessarily confer upon the municipality the power to fix one established rate for the whole period during which the contract is to run.   If, however, it be doubtful whether the language of the act of April 9, 1872, does or does not confer the power upon cities to contract for a supply of water at a fixed rate for the whole period of thirty years, such doubt must be resolved in favor of the public.   In *Seeger* v. *Mueller*, 133 Ill. 86, we said (p. 94): "Any ambiguity or doubt arising out of the terms used by the legislature in conferring their powers must be resolved in favor of the public.   *   *   *   No estoppel can ordinarily arise from the act of a municipal corporation or officer done in violation of or without authority of law.   Every person is presumed to know the nature and extent of the powers of municipal officers, and, therefore, cannot be deemed to have been deceived or misled by acts done without legal authority."   (29 Am. & Eng. Ency. of Law, p. 13; 1 Dillon on Mun. Corp: sec. 91, note).

But, even if it be admitted that the language of the act of April 9, 1872, is doubtful in the respect thus indicated, this doubt ceases to exist, when that act is construed in connection with the act of the legislature upon the same subject, passed on the next day, to-wit: April 10, 1872.   In section 1 of article 10 of the City and Village act, approved April 10, 1872, in force July 1, 1872, it is provided as follows: "The city council   *   *   *   shall have the power to provide for a supply of water   *   *   * by the construction and regulation of   *   *   *   water-

works, and to borrow money therefor, and to authorize any person or private corporation to construct and maintain the same at such rates as may be fixed by ordinance, and for a period not exceeding thirty years." (1 Starr & Curtis' Stat. p. 508). The acts of April 9, 1872, and the City and Village act of April 10, 1872, both passed at the same session of the legislature, and relating to the same matter, so far as section 1 of article 10 above quoted is concerned, are *in pari materia* and should be construed together. (*South Park Comrs.* v. *First Nat. Bank of Chicago*, 177 Ill. 234). Said section 1 authorizes the city council to empower a private corporation to construct and maintain water-works at such rates as may be fixed by ordinance. The meaning of this language is, not that the water-works are to be maintained at such established rate as may be fixed by one ordinance for a period not exceeding thirty years. The clause, "for a period not exceeding thirty years," qualifies the words, "construct and maintain the same," but does not qualify the words, "at such rates as may be fixed by ordinance." In other words, the city council may authorize a private corporation to construct and maintain water-works for a period not exceeding thirty years, and they may authorize a private corporation to construct and maintain the water-works at such rates as may from time to time be fixed by ordinance. The evident meaning of section 1 is, that there was to be reserved to the city council the power to fix the rates by ordinance at such figures as should be fair and reasonable. If the rates were to be fixed by ordinance, they could only be fixed by such ordinance, as was legal and whose passage was within the power of the council. A legislative body cannot part with its powers by any proceeding, so as not to be able to continue the exercise of such powers. It has no authority even by contract to control and embarrass its legislative powers and duties. (Greenhood on Public Policy, p. 317; Cooley's Const. Lim. p. 206; 15 Am. & Eng. Ency. of Law, p. 1045;

1 Dillon on Mun. Corp. sec. 443). What might be proper for a city this year might not be proper the next year. It is impossible to determine with absolute or even tolerable certainty what changes a few years might work in the character and reasonableness of rates to be charged for water supply. No contract is reasonable, by which the governing authority abdicates any of its legislative powers, and precludes itself from meeting, in a proper way, emergencies or occasions that may arise. "These powers are conferred in order to be exercised again and again, as may be found needful or politic, and those who hold them in trust to-day are vested with no discretion to circumscribe their limits or diminish their efficiency, but must transmit them unimpaired to their successors. This is one of the fundamental maxims of governments; and it is impossible that free government with restrictions for the protection of individual or municipal rights could long exist without its recognition." (*Gale* v. *Kalamazoo*, 23 Mich. 354; *Millikin* v. *County of Edgar*, 142 Ill. 528).

The acts of April 9 and April 10, 1872, above referred to, cannot be construed as authorizing the city of Danville to make a contract to pay a fixed rate for a supply of water to the city for a period of thirty years without violating the principle, that a legislative body, like a common council, whose members are elected for only two years, cannot restrict and curtail the legislative powers of succeeding common councils, and without violating the further principle, that the legislature has the right to regulate and control the rates of charges made by a corporation, whose business is impressed with a public use. In *City of East St. Louis* v. *East St. Louis Gas Light and Coke Co.* 98 Ill. 415, a doubt was expressed as to whether such a contract, as the defendant in error here seeks to sustain, was not invalid as unnecessarily tying up the hands of the city council for too great a length of time. In *Des-Moines* v. *Water-Works Co.* 95 Iowa, 357, where an ordinance in relation to the furnishing of water to the city by a

private corporation was under consideration, it was in-
timated that a contract with the city for rates to be
charged for water according to one unalterable standard
for forty years would be invalid.   The price to be paid
for water should be left to be determined from time to
time, inasmuch as the growth of the city will enable the
company to furnish water at much less cost than when
the water-works were first established.   .

In *Spring Valley Water-Works* v. *Schottler*, 110 U. S. 347,
it appeared that a general law was enacted by the legis-
lature of California for the formation of corporations for
supplying cities, counties and towns with water, which
provided that the rates to be charged for water should
be fixed by a board of commissioners to be appointed, in
part by the corporations, and in part by the municipal
authorities; and that the constitution and laws of the
State were subsequently changed, so as to take away
from corporations, which had been organized and put
into operation under the old constitution and laws, the
power to name members of the boards of commissioners,
and so as to place in municipal authorities the sole power
of fixing rates for water; and it was there held, that these
changes violated no provision of the Federal constitu-   .
tion, objection having been made, not to any improper
prices fixed by the officers, but to their power to fix prices
at all, the court saying:   "That it is within the power of
the government to regulate the prices at which water
should be sold by one who enjoys a virtual monopoly of
the sale, we do not doubt."

In view of the considerations thus presented, we are
of the opinion that the act of June 6, 1891, was not an
invalid and unconstitutional law, and that the legislature
had the right to confer the power to fix maximum rates
upon cities, in which private corporations had already
been authorized to supply water, as well as cities which
were to be so authorized after the passage of the act.   It
follows, that the ordinance of January 17, 1895, was a

valid ordinance. It is to be remembered, that the amount, which the company seeks to recover in this suit, is for water furnished after the ordinance of January 17, 1895, was passed, and after the company received the notice provided for in that ordinance.

*Second*—As to the point, that the demurrer should have been carried back to the declaration, we think that the motion to carry the demurrer back was properly overruled by the court below. We do not deem it necessary to discuss the question, whether the contract here under consideration amounted to an indebtedness or not; nor, whether the declaration should have averred, that provision was made for the collection of a direct annual tax to meet that indebtedness, as it fell due. We pass no opinion upon these questions. The city in its pleas admitted, that it owed $1930.00 of the $2620.62, claimed by the water company. The defense set up in these pleas is a defense, made only to the excess of the amount claimed over the sum of $1930.00. But the whole amount claimed was one indebtedness. If the declaration was defective in not averring that there had been, before or at the time of making the contract, a provision for the collection of a direct annual tax, it was defective in not making such averment as to the $1930.00 as well as to the rest of the amount claimed. The defendant is estopped by its pleas from denying the validity of the indebtedness to the extent of $1930.00. It could not admit an indebtedness to that amount, and in the same breath insist upon an objection to the declaration, which attacked the validity of the indebtedness so admitted. For this reason, we do not regard it necessary to consider the points raised with reference to the action of the court in overruling the motion to carry the demurrer back to the declaration. What has already been said sustains the objection of the city to so much of the indebtedness, as it complains of. It is, therefore, unnecessary to consider the other points made.

We are of the opinion, that the court below erred in sustaining the demurrers to the first and second special pleas of the city, the plaintiff in error here, and in rendering judgment for the whole amount claimed against the city.

Accordingly, the judgment of the circuit court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

Mr. Justice Phillips, dissenting:

I do not concur with the reasoning or conclusion reached in the opinion adopted by the majority of this court. On this record two questions are presented for adjudication in this court: First, is ordinance No. 517 a valid enactment, and if so, was it error to sustain the demurrer to the first and second pleas; and second, did the allegations of the declaration show a valid promise by the city for the payment of the rental for one hundred and fifty-eight hydrants in the manner authorized by law.

By section 1 of article 10 of the City and Village act it was provided: "The city council or board of trustees shall have the power to provide for a supply of water by the boring and sinking of artesian wells, or by the construction and regulation of wells, pumps, cisterns, reservoirs or water-works, and to borrow money therefor, and to authorize any person or private corporation to construct and maintain the same at such rates as may be fixed by ordinance, and for a period not exceeding thirty years; also to prevent the unnecessary waste of water, to prevent the pollution of the water, and injuries to such wells, pumps, cisterns, reservoirs or water-works." (Hurd's Stat. 1889, p. 271.)

This section was in force at the time of the adoption of the original ordinance, by which the contract was made for the one hundred hydrants at $75 each and the additional hydrants at a specified rate. The right is

granted by the foregoing section to contract for a supply of water for a period of thirty years, and the right to contract for a supply necessarily gives the right to fix the rate at which the supply shall be furnished. By the provision above quoted the State invested the municipality with power to make and contract for a supply of water for a period of thirty years, and it would be difficult to comprehend the meaning of terms authorizing a contract to be made for a supply of water to be furnished without including therein the right to fix the price at which it should be so furnished. This power conferred by the legislature sanctions a particular act and authorizes it to be done. Where a contract is made to accomplish the act thus sanctioned it must be held valid.

The power of the State in regulating, governing and conferring power on municipalities is supreme, but where it confers a power with reference to a contract, and that power is once exercised, it is subject, like other legislative powers, to the authority of the State and Federal constitutions, and when it invests a corporation which derives its power from the State with the power to make a contract, and that power is exercised, the legislature is thereafter concluded from annulling or rendering invalid such contract. Such a contract is only subject to judicial construction, and is sacred from interference by the legislative power. Such a contract made by a municipality under the power conferred by a State legislature cannot be impaired, and has thrown around it the positive restrictions of the Federal and State constitutions. *Citizens' Water Co.* v. *Bridgeport, etc. Co.* 55 Conn. 1; *Rockland Water-Works Co.* v. *Camden,* 80 Me. 544; *New Orleans Water-Works Co.* v. *Rivers,* 115 U. S. 74; *St. Timothy's Water-Works Co.* v. *New Orleans Water-Works Co.* 120 id. 64.

In a contract running for a period of years for the supply of water a different rule is invoked from that which applies in the case where a contract is made for lighting a city. In the one case the legislature has conferred the

power on the municipality to contract for a period of years; in the other it is silent as to such power. The municipality having no power other than that granted by the legislature, is limited to the powers granted and known conditions of most of the cities and villages of the State of Illinois, which necessarily must exercise the power of providing a means of supplying their inhabitants with water, and which could not do so without conferring privileges and entering into contracts in many cases; and the legislature, deeming the power to contract for a period of years necessary to secure such supply of water, by the enactment above quoted exercised a power not restricted by the constitution of the State of Illinois, and conferred upon the municipality a right to so contract for a term of years. The necessary construction of the section heretofore quoted is, that it conferred the power to contract for a supply of water and fix the price thereof for a period of thirty years. Subsequently to that enactment, by an act approved July 1, 1885, entitled "An act to enable cities, incorporated towns and villages to contract for a supply of water for public use, and to levy and collect a tax for the water so supplied," it was provided: "That in all cities, incorporated towns and villages where water-works have been or may hereafter be constructed by any person or incorporated company, the city, town or village authorities in such cities, incorporated towns and villages may contract with such person or incorporated company for a supply of water for public use for a period not exceeding thirty years." No reasonable construction can be given the former section, with reference to the period to contract, different from that to be given the latter act. Both authorize the fixing of a price at which the water supplied shall be furnished. It was not error to sustain the demurrer to the first and second pleas.

The contention that the declaration does not set forth a binding promise, because it contains no averment that

before or at the time of making the contract a provision for the collection of a tax to meet payments as they might fall due was provided for, or that no appropriation had been made before or at the time of making the contract, cannot be sustained. The constitutional prohibition against going into debt beyond the amount limited by the constitution does not prevent the making of contracts for supplying an article of daily consumption at a stipulated price, to be paid for at stated intervals after delivery, and which was paid for by annual appropriations levied and collected for that purpose. That does not create an indebtedness within the meaning of the constitution. (*City of East St. Louis* v. *East St. Louis Gas Light and Coke Co.* 98 Ill. 415.) The sufficiency of the declaration in stating the cause of action must be held well pleaded when it violates no provision of the ordinances of the city or the constitution and laws of the State of Illinois, and if the city has the power to make a contract for a period of thirty years under the legislation of the State, and that legislation is not unconstitutional, then it must be held that the declaration states a cause of action, and the power having been conferred upon municipalities to enter into contracts for such a length of time for an article of daily consumption, it is not the incurring of an indebtedness which requires an appropriation to be made providing for the whole period of thirty years, as to so hold would place a restriction on the power of municipalities to contract, and would obstruct public wants, retard improvements and not be consonant with the spirit and meaning of the act. It was not error for the court to refuse to carry the demurrer back to the declaration, in my opinion.

CRAIG and CARTWRIGHT, JJ., also dissenting.