600 APPELLATE COURTS OF ILLINOIS.

Eastern Illinois S. N. S. v. City of Charleston, 193 Ill. App. 600.

# Eastern Illinois State Normal School, Appellant, v. City of Charleston, Appellee.

1. MUNICIPAL CORPORATIONS, § 41*—*what powers possessed by.* A municipal corporation possesses and may exercise only such powers as are expressly delegated to it by the legislature, or which are necessarily implied from those expressly given.

2. MUNICIPAL CORPORATIONS, § 799*—*power as to waterworks.* All of the power and authority of a city in relation to waterworks is acquired from paragraphs 254-270, 280 of ch. 24 of the statutes (J. & A. ¶¶ 2012-2019, 2081).

3. MUNICIPAL CORPORATIONS, § 814*—*when contract to supply water donation.* A resolution adopted by a city council offering to supply the Eastern Illinois State Normal School with all the water needed by it for a term of fifty years in consideration of a payment of $5, *held* a donation.

4. MUNICIPAL CORPORATIONS, § 155*—*power to give away property.* The councilmen of a city are the trustees of the municipality, and have no power to donate any of its property or funds.

5. MUNICIPAL CORPORATIONS, § 808a*—*when may contract to supply water at fixed rate for term of years.* Neither express nor implied power to permit a city to bind itself by contract to furnish water at a fixed rate for a period of years is conferred by paragraphs 254-270, 280 of chapter 24 of the statutes (J. & A. ¶¶ 2012-2019, 2081).

6. MUNICIPAL CORPORATIONS, § 808a*—*validity of contract to furnish water for term of years.* A resolution adopted by the common council of the city of Charleston, agreeing to furnish the Eastern Illinois State Normal School with all of the water it required for a term of fifty years in consideration of $5, is, although acted upon for a number of years, *ultra vires* and void.

7. MUNICIPAL CORPORATIONS, § 808a*—*when city estopped from claiming contract to supply water is ultra vires.* The acceptance by the trustees of the Eastern Illinois State Normal School of a resolution adopted by the common council of the city of Charleston, agreeing to supply the school with all of the water it needed for a term of fifty years in consideration of $5, does not estop the city from setting up that the contract is *ultra vires* and void.

ELDREDGE, J., dissenting.

Appeal from the Circuit Court of Coles county; the Hon. E. R. E. KIMBROUGH, Judge, presiding. Heard in this court at the April term, 1914. Affirmed. Opinion filed April 16, 1915. Rehearing denied May 26, 1915.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Statement by the Court. In 1895, the Legislature of Illinois passed an act establishing the Eastern Illinois State Normal School (sections 364 to 380 of chapter 122 entitled "Schools" [J. & A. ¶¶ 10491-10507]). Section 373 (J. & A. ¶ 10500) provides: "The Trustees shall, as soon as practicable after their appointment, arrange to receive from the localities desiring to secure the location of said school, proposals for donation of a site, of not less than forty acres of ground, and other valuable considerations, and shall locate the same in the place offering the most advantageous conditions, all things considered, in that portion of the State, lying north of the Baltimore and Ohio Southwestern Railroad, and south of the Wabash Railroad, and east of the main line of the Illinois Central Railroad, and the counties through which said roads run, with a view of obtaining a good water supply and other conveniences for the use of the institution."

The city council of the city of Charleston, at a regular meeting held on July 5, 1895, before the school was located, adopted the following resolution as an inducement to procure the location of the school at that city:

"A resolution offering the Trustees of the Eastern Illinois State Normal School, providing it be located in this city, all the water it may require for use in its buildings and on its grounds also for fire protection for the consideration of five dollars for the period of fifty years was read and on motion adopted by all voting Aye." The city of Charleston at that time was the owner of a municipal water plant.

The trustees of said school were notified of said resolution and relying thereon, located the school on September 1, 1895, on a parcel of land adjoining the south corporate limits of said city of Charleston. The trustees thereafter erected buildings for said school on said land and furnished the same, and the school was

opened in 1899. At the time the school was located the city had a water main about twenty feet north of its south corporate line. The trustees, after the passage of said resolution and the location of the school, tapped said water main and connected therewith water pipes extending to the school grounds and buildings, and the school has ever since maintained said water pipes at its own expense and derived its water supply from the said municipal water plant. In 1904, the land on which the school is located was annexed to and included within the city limits.

On May 15, 1913, the city council voted to discontinue furnishing water to the school without charge, and in July, 1913, passed an ordinance fixing the rates for water at nine cents per thousand gallons and authorizing the water board to install water meters wherever in their judgment it was necessary, the cost of the meter and installation to be charged to the consumer. The city installed two meters in the service pipes connected with the school at a cost of $309.30, and served notice on the trustees that on October 1st the meters would be read and a bill rendered for water consumed to that date; that a bill would be rendered monthly thereafter, and that unless the bills for installing the meters were paid and arrangements made for payment for the water consumed the supply would be cut off without notice. In November, 1913, the rate was by ordinance changed to six and one-half cents per thousand gallons. The city now demands $188.64 water rent from August 25, 1913 to October 1, 1913.

The school has an attendance of 500 students and 33 teachers. It has several large buildings used for educational and dormitory purposes, which are heated by steam. The only water supply it has is from the municipal water plant of the city of Charleston and which it has used under the resolution passed by the city council before the school was located.

The city now threatens to cut off the water supply unless the school pays for the installation of the meters and the water used through them at the rate fixed by the ordinance.

The school filed a bill in chancery praying for an injunction restraining the city and its officers from obstructing or interfering with the flow of city water from the city mains into the water pipes of the school; that the ordinances passed by the city council be decreed null and void as to the complainant, and that the city be decreed to comply with the terms of the resolution passed before the location of the school. A temporary injunction was issued. The defendant filed a special demurrer to the bill, which on the hearing was sustained and complainant standing by its bill, judgment was rendered dismissing the bill for want of equity. The complainant appeals.

T. N. COFER and P. J. LUCEY, for appellant

JOHN T. KINCAID and ALBERT C. ANDERSON, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

The question presented by this record is whether or not the offer made by the city of Charleston in the resolution adopted by the city council on July 5, 1895, and its acceptance by the trustees of appellant, coupled with the location and maintenance of the school at the city of Charleston is a legal, valid and enforceable contract.

The primary question is whether or not the appellant had the right and authority to make the offer and contract set forth in the resolution. The bill contains no allegations concerning the organization of the city of Charleston nor any allegation concerning any right or authority in the city council to make contracts in

604 . Appellate Courts of Illinois.

Eastern Illinois S. N. S. v. City of Charleston, 193 Ill. App. 600.

the nature of that which it is contended was made by the passage of the resolution by the city council and its acceptance by the trustees of appellant.

It is only from the allegations, that the name of appellee is the city of Charleston and that it has a city council and corporate limits that the inference is drawn that it is a municipal corporation. However, both parties state that appellee is a municipal corporation.

Municipal corporations may exercise only such powers as are expressly delegated to them by the legislature and such as are necessarily implied from those expressly given. *City of Chicago v. N. & M. Hotel Co.,* 248 Ill. 265; *Smith v. McDowell,* 148 Ill. 51; *People v. Board of Education Paris Union School Dist,* 255 Ill. 572; *Illinois Cent. Hospital for Insane v. City of Jacksonville,* 61 Ill. App. 199: There is therefore no such thing as an inherent power in any municipality which is created by legislative enactment.

Cities get all their power and authority relating to waterworks from paragraphs 254 to 270 and '280 of chapter 24 of the statute (J. & A. ¶¶ 2012-2019, 2081). Under section 254 (J. & A. ¶ 2012) cities are authorized and have power, "to provide for a supply of water for the purposes of fire protection, and for the use of the inhabitants of such cities, incorporated towns or villages by the erection, construction and maintaining of a system of water-works or by uniting with any adjacent city, incorporated town or village, in the erection, construction and maintaining of a system of water-works for the joint use of such cities, incorporated towns or villages," etc.

"The business of furnishing the inhabitants of a city with water by means of water works so constructed as to bring the water from some permanent source of supply and distribute it by means of pipes laid in the streets to the residences and places of business of those desiring to obtain their water supply in that manner,

though not an exercise of the powers of sovereignty is undoubtedly a business which is public in its nature, and belongs to that class of occupations or enterprises upon which a public interest is impressed." *Wagner v. City of Rock Island,* 146 Ill. 139; *City of Danville v. Danville Water Co.,* 178 Ill. 299.

Section 257 of chapter 24 of the statute (J. & A. ¶ 2015) provides: "The common council of such cities * * * shall have power to make and enforce all needful rules and regulations in the erection, construction and management of such water-works, and for the use of water supplied by the same. And such cities * * * shall have the right and power to tax, assess and collect from the inhabitants thereof such tax, rent or rates for the use and benefit of water used or supplied to them by such water-works, as the common council * * * shall deem just and expedient. And all such water taxes, rates or rents shall be a lien upon the premises and real estate upon or for which the same is used or supplied. And such taxes, rents or rates shall be paid and collected, and such lien enforced, in such manner as the common council shall, by ordinance, direct and provide."

The act of the legislature establishing appellant provides for the donation of a site and other valuable considerations from localities desiring to secure the location of appellant. The resolution offering to the trustees all the water the school may need for use in its buildings and on its grounds and for fire protection for the consideration of $5 for fifty years, is an offer to donate all the water the appellant may require for fifty years. The fact that the sum of $5 is mentioned as a consideration does not relieve the contract from the charge that it is a donation.

The city councilmen are trustees of the municipality, and have no authority to donate any of the funds or property of the city. "Every one is presumed to know the extent of a municipal corporation's control

606        APPELLATE COURTS OF ILLINOIS.

Eastern Illinois S. N. S. v. City of Charleston, 193 Ill. App. 600.

of its public funds, and such a corporation cannot be estopped to aver its incapacity when an effort is made to enforce against it a contract which it had no authority to make." *People v. Parker,* 231 Ill. 478; *Hope v. City of Alton,* 214 Ill. 102; *Roemheld v. City of Chicago,* 231 Ill. 467; *City of Danville v. Danville Water Co., supra.*

Counsel for appellant cite the cases of *Burre v. City of Carbondale,* 76 Ill. 455, and *City of Chicago v. University of Chicago,* 131 Ill. App. 361, affirmed in 228 Ill. 605, as holding that the city council had authority to bind appellee by the resolution adopted by it. The *City of Carbondale* case, *supra,* is not in point for the reason that the question involved was the donation of certain bonds voted to secure the location of the Southern Illinois Normal University. In 1869, the legislature passed an act authorizing cities and towns in southern Illinois to issue bonds in aid of the Southern Illinois University (Sess. Laws 1869, page 247), so that in that case cities had been expressly authorized by the State to make such donations. In the *University of Chicago* case, *supra,* where the question presented by the bill was the validity of an ordinance directing the water rates assessed against charitable, religious and educational institutions within the city of Chicago to be remitted and canceled, the city in its answer to the bill filed by the university, alleged the validity of the ordinance. The Supreme Court affirmed the case for the reason that the "city cannot now be heard to say that the Circuit Court erred in adopting its view," and did not pass upon the question of the right of a municipality to donate water to the university.

The powers conferred by the statute on cities neither expressly nor impliedly authorize a city to bind itself by contract to furnish water for a period of years at a fixed rate, (*Illinois Cent. Hospital for Insane v. City of Jacksonville, supra),* and a city council has the right

THIRD DISTRICT—APRIL, 1915.          607

Eastern Illinois S. N. S. v. City of Charleston, 193 Ill. App. 600.

to change the rates at any time (*City of Danville v. Danville Water Co., supra*), hence the members of one city council cannot by contract bind their successors.

We are of the opinion that donations, of the kind requested by the act creating appellant, can only be made by individuals and private corporations desiring the location in the vicinity and not by municipalities. The proposals must come from the people of the locality as individuals. The locality is not the municipality. The donation proposed by the resolution of the city council of the city of Charleston was unauthorized and *ultra vires*.

It is further contended by appellant that since the proposal in the resolution was accepted by the trustees of appellant and the school erected and maintained, the city is estopped to deny the validity of the contract.

"The doctrine of *ultra vires* is applied with greater strictness to municipal bodies than to private corporations. (1 Smith on Mun. Corp. sec. 661.) Persons dealing with a municipal corporation are chargeable with notice of its powers to contract. * * * A municipal corporation is not estopped from denying the validity of a contract when there was no authority for making it." *Hope v. City of Alton, supra; May v. City of Chicago*, 222 Ill. 595; *Snyder v. City of Mt. Pulaski*, 176 Ill. 397; *City of Danville v. Danville Water Co., supra*. The contention of appellant that appellee is estopped to deny the validity of the contract cannot be sustained. The decree is affirmed.

*Affirmed.*

Mr. Justice Eldredge dissents.